**Alexandria**

RALPH DONALD DAVIS

v.

COMMONWEALTH OF VIRGINIA

No. 1763-88-4

Decided March 19, 1991

COUNSEL

Ronald Wayne Fahy, for appellant.

Robert H. Anderson III, Assistant Attorney General, (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**KOONTZ, C.J.**—This is an appeal from a judgment of the Circuit Court of Prince William County entered on January 10, 1989, wherein the court found Ralph Donald Davis, appellant, in violation of the terms of his probation, revoked his probation, and reinstated his previously suspended sentences totalling ten years in the penitentiary. In addition to asserting his revocation hearing was not held within the time limits established under Code § 19.2-306, Davis asserts the circuit court erred by admitting hearsay testimony concerning his conduct while on probation and by improperly considering his intervening criminal convictions because the show cause orders issued did not refer to them as a basis for revocation. Finally, Davis asserts there is insufficient evidence to support the court's finding that he violated his probation terms, and that he was denied due process by not being advised of the terms of his probation and by the admission of hearsay evidence. We affirm the court's decision.

On March 29, 1985, Davis was sentenced on three counts of grand larceny by false pretense and two counts of writing a bad check. In addition to suspending ten years of Davis' sentence con-

ditioned upon his keeping the peace and being of good behavior, the circuit court placed Davis on two years probation after his release from prison. The court also ordered Davis to comply with all of the conditions of probation set forth in Form P.B. 2 of the Virginia Probation and Parole Board, and to successfully complete a drug rehabilitation program.

In a letter dated June 5, 1987, Lou Ann White, Davis' probation officer, notified the court that on April 16, 1986, Davis had been released from the penitentiary to parole and probation supervision with the directions to reside in West Virginia with his family. White further informed the court that Davis never reported to his assigned parole officer in West Virginia and that there was an outstanding Virginia Parole Board warrant for his arrest. Davis was never authorized to reside anywhere other than with his family in West Virginia and had never informed the authorities of his whereabouts. White also notified the court that on May 19, 1987, the Manassas Police Department informed her that Davis had been residing in Prince William County where there were outstanding warrants for his arrest for forgery, uttering and false pretenses charges. Additionally, Davis was wanted in Newport News for three counts of passing bad checks. Based on this information, White recommended that the court issue a bench warrant for Davis' arrest.

On June 20, 1987, the court issued show cause orders requiring Davis to show why his suspended sentences and supervised probation should not be revoked. The orders alleged a violation of the probation condition that Davis not "change his residence or travel outside of a designated area nor leave the State of Virginia without permission of his probation and parole officer." At the subsequent revocation hearing held on December 7, 1988, White was the Commonwealth's sole witness and testified to the information set forth in her letter to the court, which was also admitted into the record. She also testified Davis had been convicted of petit larceny by bad check and a misdemeanor fraudulent conversion based on offenses that occurred after his release from the penitentiary.

Davis testified at the revocation hearing that he was released on April 16 and was going to go to his parents home in West Virginia according to his parole and probation "home plan," but decided not to do so after speaking with his stepmother by tele-

phone. Instead, Davis testified that, without notifying his parole and probation officer, he stayed in Manassas for two months and then moved to Newport News, where he was convicted of two criminal offenses. Finally, Davis admitted he was aware he was in violation of his parole the entire time he was out of the penitentiary, but claimed he lacked similar awareness of his supervised probation violations since he had never signed or seen any probation rules.

After due consideration of all the evidence and taking judicial notice of its own orders regarding Davis' suspended sentences and probation, the court found Davis was in violation of the terms and conditions of his probation based on his absconding from probation and his new criminal convictions. The court then revoked Davis' five suspended sentences.

■ We first address Davis' contention that White's testimony was hearsay and improperly admitted at the probation revocation hearing. Both the United States Supreme Court and this Court have previously indicated probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution. *See Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *Atkins v. Commonwealth*, 2 Va. App. 329, 331-32, 343 S.E.2d 385, 387 (1986). Specifically, the United States Supreme Court has stated that in revocation hearings "formal procedures and rules of evidence are not employed," *Scarpelli*, 411 U.S. at 789, and that the process of revocation hearings "should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." *Morrissey*, 408 U.S. at 489. Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing based on the court's discretion. *See id.*

In the present case, White gave testimony that was partially based on information provided to her by other governmental officials concerning probation and parole violations by Davis. Also, the court admitted into record White's June 5, 1987 letter to the court detailing the basis for the revocation hearing. While such evidence is clearly hearsay and generally inadmissible in a criminal trial, the court may in its discretion admit such evidence in the relaxed process of a revocation hearing. Therefore, we find

White's testimony and her June 5, 1987 letter to the court reflecting information provided by other governmental officials was properly admitted into evidence.

Next, we turn to Davis' contention that there is insufficient evidence to support the court's determination that he violated the terms of his probation within his probation period or that his revocation hearing was timely held. Under Code § 19.2-306, a court may revoke the suspension of a sentence and probation "for any cause deemed by it sufficient which occurred at any time within the probation period" so long as the probationer is "arrested and brought before the court at any time within one year after the probation period." Davis argues there was no evidence presented at trial to establish the date he was released from prison, the date his probation began, the date he failed to report to West Virginia, or the dates of his subsequent criminal convictions, and therefore the court could not have accurately determined whether the time limits set forth in Code § 19.2-306 were followed.

Davis is correct when he claims no evidence at the hearing established the specific dates of his subsequent criminal convictions. However, the court took judicial notice of its own orders establishing his probation period and admitted into evidence White's June 5, 1987 letter to the court outlining the dates of Davis' release and the beginning of his probation. The record created by those orders and by White's letter establishes Davis was sentenced on five convictions on March 29, 1985. According to White's letter, Davis was released from prison on April 16, 1986. The letter also explained that Davis was wanted in Newport News at that time for three criminal offenses. Further, Davis testified he was released on April 16 and almost immediately absconded without attempting to report to his probation and parole officer. He also conceded he was always aware he was in violation of parole and was convicted of two criminal offenses.

Based on White's letter and Davis' testimony, the court could determine that Davis' probation period was intended to run from April 16, 1986 to April 16, 1988 and that under Code § 19.2-306, the court could revoke Davis' suspended sentence any time until April 16, 1989. Since the court revoked Davis' probation and suspended sentences in January, 1989, this satisfied the time limits set forth in Code § 19.2-306. Thus, the court only had to determine whether sufficient cause to revoke Davis' probation and sus-

pended sentence arose during Davis' probation period.

Unquestionably, Davis violated the terms of his probation within his probation period when he failed either to go to West Virginia or to report to either of his Virginia or West Virginia parole and probation officers. Though Davis claims that he did not believe he began his probation and that he was unaware of the terms of his probation, we do not accept his professed ignorance. The record indicates that Davis was personally present at his sentencing, where, evidenced by its order, the court clearly stated Davis was to be placed on probation "for a period of two (2) years after his release from the penitentiary" and the conditions of probation were contained in Form P.B. 2 of the Virginia Probation and Parole Board. Davis was also informed his suspended sentence was conditioned on his maintaining "uniform good behavior."

■ A trial court has broad discretion to revoke a suspended sentence and probation based on Code § 19.2-306, which allows a court to do so "for any cause deemed by it sufficient." *See Hamilton v. Commonwealth*, 217 Va. 325, 326, 228 S.E.2d 555, 556 (1976); *Slayton v. Commonwealth*, 185 Va. 357, 365, 38 S.E.2d 479, 483 (1946). The court's findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion. *Hamilton*, 217 Va. at 327, 228 S.E.2d at 556; *Slayton*, 185 Va. at 367, 38 S.E.2d at 484. Here, the trial court was justified in exercising its discretion to revoke Davis' suspended sentence and probation based solely on the fact that Davis failed to maintain good behavior when he did not report to his parole and probation officer upon being released from the penitentiary.

■ Finally, Davis argues that the court erred by improperly admitting and considering evidence of his Newport News criminal convictions. "Error in a criminal case requires reversal of a conviction unless the Commonwealth established that the error is harmless beyond a reasonable doubt." *White v. Commonwealth*, 9 Va. App. 366, 371, 388 S.E.2d 645, 647 (1990), *overruled by Lavinder v. Commonwealth*, 12 Va. App. 1003, 407 S.E.2d 910 (1991). Though this is not an appeal of a criminal prosecution and therefore not subject to the same constitutional constraints, we find that, even assuming *arguendo* that the trial court erred in considering this evidence, any such error was harmless since there were other sufficient causes for the court to revoke Davis' suspended sentences and probation, namely his complete failure to report to his parole and probation officer. We do not directly ad-

dress Davis' due process arguments since we have already decided that the hearsay evidence was properly admitted and that Davis was adequately notified of the conditions of his probation and suspended sentences.

For the foregoing reasons, we affirm the trial court's decision.

*Affirmed.*

Benton, J., and Keenan, J., concurred.