COURT OF APPEALS OF VIRGINIA

Present: Senior Judges Annunziata, Frank and Petty

MICHAEL HENRY DIBELLA

MEMORANDUM OPINION[*]

v.      Record No. 1191-21-1                    PER CURIAM
                                                JULY 12, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
L. Wayne Farmer, Judge

(Paul A. Fritzinger, Deputy Public Defender, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Jason D. Reed, Assistant
Attorney General, on brief), for appellee.


Counsel for Michael Henry Dibella, appellant, filed a brief on his behalf accompanied by a

motion for leave to withdraw in accordance with *Anders v. California*, 386 U.S. 738, 744 (1967).

A copy of that brief has been furnished to Dibella with sufficient time for him to raise any matter

that he chooses. On appeal, Dibella, through counsel, argues that the trial court abused its

discretion by revoking his previously suspended sentence. Dibella has not filed any *pro se*

supplemental pleadings. We have reviewed the parties' pleadings, fully examined the proceedings,

and determined the case to be wholly without merit as set forth below. Thus, the panel

unanimously holds that oral argument is unnecessary. *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed

unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

On December 29, 2016, Dibella pled guilty and was convicted of possession of a firearm by a non-violent felon. The trial court sentenced him to five years, with four years and five months suspended, in accordance with a written plea agreement. Dibella was released from incarceration in 2017. On April 12, 2021, Dibella's probation officer filed a violation memorandum detailing Dibella's non-compliance with probation. The report stated that Dibella had been charged with misdemeanor assault and battery of a family member and strangulation resulting in a wound/injury. The strangulation charge was reduced to contributing to the delinquency of a minor. Dibella pled guilty and was sentenced to twelve months, all suspended, one year of supervision with the Community Corrections program, and ordered to pay a fine and court costs on each new conviction. The trial court issued a rule to show cause why the suspended sentence should not be revoked on April 22, 2021. When Dibella could not be found, the trial court issued a second rule to show cause why the suspended sentence should not be revoked on May 27, 2021.

At the October 5, 2021 revocation hearing the trial court noted that it reviewed the April 2021 probation memorandum, that it had entered a show cause over probation's recommendation that no action be taken, and that it had reviewed Dibella's sentencing guidelines. Dibella did not dispute that he had received new convictions while on probation. Consequently, the trial court found him in violation of his probation.

At the sentencing phase of the hearing, the Commonwealth asked the court to take judicial notice of its own records. The Commonwealth noted that the probation violation involved Dibella's eleven-year-old daughter. In the underlying offense Dibella and his wife, Ashley Dibella, had a dispute. In that incident, Dibella, a convicted felon, threw Ashley a loaded firearm and told her to

- 2 -

shoot herself in the head, which she did. Ashley survived the incident, and Dibella was charged and convicted of possession of a firearm by a non-violent felon.

Franklin Probation Officer Steven Baker testified that he briefly supervised Dibella when his case was transferred after the probation violation in December 2020. Officer Baker stated that Dibella was cooperative and compliant with probation during his month supervising him. He recommended that no action be taken because Dibella had been paying his court costs and had attended family counseling. On cross-examination, Officer Baker stated that his department was unaware of the domestic strife and the numerous police calls from the residence when he recommended that the court take no action for this probation violation.

Suffolk Probation Officer Gary Ellis testified that Dibella was transferred from Franklin probation and parole to Suffolk in March 2021. Since then, Dibella has positively adjusted to supervision and has been compliant. Dibella has had negative drug urine screens, complied with the terms of his new misdemeanor convictions, and recently completed a parenting course. On cross-examination Officer Ellis admitted that he was unaware of any family conflict other than the incident that led to the new convictions.

Ashley testified that although she and Dibella have had problems, those issues were in the past and "[t]oday [her current situation] is perfect." The family has undergone counseling, and Dibella has been diagnosed with bipolar disorder. Dibella is currently working as a DoorDash driver to help support the family. On the date of Dibella's probation violation, Ashley testified that their daughter was "acting out" and Dibella attempted to parent her. Their daughter has "some issues" and is currently in the process of being diagnosed. On cross-examination Ashley admitted that both her children were in the home when she shot herself at Dibella's direction. On re-direct, Ashley clarified that her daughter has recanted her story about what Dibella had done to her on the day of the probation violation.

Dibella stated that he had almost completed his probation period before receiving the new convictions. He took responsibility for his actions and pled guilty. He had participated in counseling and completed a year of parenting classes. When repeatedly asked, on cross-examination, how many times the police had been called to his residence in the last five years he finally admitted that it was three to four times. He claimed, however, that police were called to the residence because of Ashley's brother and not because of him. He continued to dispute the facts of his new convictions, and he maintained that his daughter lied and ultimately recanted her accusations that he beat her.

The Commonwealth argued that Ashley has supported Dibella because there is a financial incentive for the family if Dibella remains at liberty. The Commonwealth further argued that Dibella had not benefited from counseling, noting that he has attended counseling since the underlying offense and was in counseling when he assaulted his daughter. The Commonwealth noted that the facts of both the underlying offense, and the new convictions, involved a domestic conflict. The Commonwealth concluded by asking the court to revoke and impose the remainder of Dibella's suspended sentence.

Dibella argued that both of his probation officers testified he was compliant with the terms and conditions of his probation, and both recommended that no action be taken. He admits that he received new convictions while on probation but emphasized that he took responsibility for his actions when he pleaded guilty. He is in therapy and counseling to address his problems and is working towards stable employment. He asked the court to revoke and resuspend all his suspended time or, in the alternative, allow him to serve only a short period of time. In allocution Dibella disputed the facts of the underlying charge—that he threw a loaded gun at his wife and told her to shoot herself in the head. He claimed that she took the gun and shot herself because she was suicidal that day.

After considering argument from counsel, the trial court made findings before announcing Dibella's sentence. The court noted that the facts of the underlying charge were not in dispute. At the time of that charge, he was a convicted felon who possessed a firearm. He threw a loaded gun at his wife and told her to shoot herself, which she did. Her survival had nothing to do with Dibella. Despite this conduct, the court noted that Dibella was given a "gift" when he was sentenced to serve only seven months and that as a result his conduct "really has to be perfect [but] your conduct hasn't been perfect at all." The court noted that the probation officers were unable to provide insight into Dibella's house on a day-to-day basis or speak to the "great discord in the house." The court believed that Ashley normalized Dibella's behavior and conduct, which the court found "very concerning." The court also recalled that it had accepted Dibella's pleas for the new convictions and the stipulation of facts that Dibella beat his child with a belt and a coat hanger. Although Ashley and Dibella claimed that their daughter fabricated the incident, the court doubted that the child's visible injuries were feigned. The court revoked Dibella's suspended sentence and resuspended two years and five months, for an active sentence of two years' incarceration. When explaining its departure from the guidelines the trial court wrote that "[d]efendant received a very lenient sentence originally. Continues violence against family member and new related convictions. Danger to family." This appeal follows.

## ANALYSIS

Dibella contends that the trial court abused its discretion by upwardly departing from the guidelines and imposing two years of active incarceration on his first probation violation. He argues that the departure was arbitrary and disproportionate to the violation committed. The trial court not only exceeded the recommended sentencing guidelines, he asserts, but also the recommendation of probation and parole. Dibella argues that the trial court's reasoning for its departure from the recommendations is unsubstantiated by the facts because the underlying charge was not for violence

against a family member. Additionally, Dibella disputes the assertions that he knew the gun was loaded and intended his wife harm when he threw her the gun. Dibella further contends that the trial court failed to address why it disregarded the probation officers' recommendation of no action. Finally, Dibella argues that the trial court abused its discretion when it believed the unsubstantiated arguments by the Commonwealth that there was turmoil in the home instead of the live testimony of Dibella and Ashley.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Moreover, under the revocation statute in effect when this revocation proceeding began, once the trial court found that Dibella had violated the terms of the suspension, it was obligated to revoke the suspended sentence and it was in "full force and effect." Code § 19.2-306(C)(ii) (2020 Cum. Supp.).[1] The trial court was permitted—but not required—to resuspend all or part of the sentence. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).

The record demonstrates, and Dibella acknowledged, that he had suffered new criminal convictions during the suspension period; therefore, the trial court had sufficient cause to revoke his suspended sentence. It was equally within the trial court's purview to weigh any mitigating factors Dibella presented, such as the testimony of Dibella and Ashley that their daughter had fabricated the incident, that Dibella took responsibility for the incident and pled guilty, and that since the incident

---

[1] Although Code § 19.2-306(C) was amended effective July 1, 2021, Dibella does not argue that the statutory amendment applied in his case and this Court recently held that it did not apply when, as here, the probation violations occurred and the revocation proceeding began before the effective date of the amendment. *See Green v. Commonwealth*, 75 Va. App. 69, ___ & n.4 (2022). Moreover, even under the new statutory framework, the trial court has discretion to impose the balance of a previously suspended sentence when a probationer commits a new offense during the suspension period. *See* 2021 Va. Acts Sp. Sess. I, ch. 538; Code § 19.2-306.1(B).

Dibella had been in therapy and family counseling. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000).

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). While on probation, Dibella accumulated two convictions against his eleven-year-old daughter. Dibella's disregard of the terms of his suspended sentence supports a finding that he was not amendable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Dibella failed to make productive use of the grace that had been extended to him and continued to engage in criminal conduct during the suspension period.

Further, the probation violation guidelines, like the standard sentencing guidelines, "are not binding on the trial judge; rather, the guidelines are merely a 'tool' to assist the judge in fixing an appropriate punishment." *Belcher v. Commonwealth*, 17 Va. App. 44, 45 (1993). Code § 19.2-298.01(F) precludes appellate review of whether the trial court adhered to Code § 19.2-298.01(B). Specifically, Code § 19.2-298.01(F) states that "[t]he failure to follow any or all of the provisions of [§ 19.2-298.01] *in the prescribed manner* shall not be reviewable on appeal or the basis of any other post-conviction relief." (emphasis added); *see also, West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007) (holding Virginia sentencing guidelines are discretionary); *Fazili v. Commonwealth*, 71 Va. App. 239, 248-49 (2019) (holding Code § 19.2-298.01(F) prohibits appellate review of a trial court's failure to follow discretionary sentencing guidelines). In view of this broad statutory exemption from appeal, we hold that examining whether the trial court's written

explanation in the sentencing revocation report satisfies Code § 19.2-298.01(B) provides no basis for review on appeal.

Finally, to the extent that Dibella argues that his sentence was disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in *Cole* that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (*per curiam*)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes").

Accordingly, we hold that the sentence the trial court imposed represents a proper exercise of its sentencing discretion. *See Alsberry*, 39 Va. App. at 321-22 (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

CONCLUSION

Accordingly, we affirm the trial court's judgment and grant the motion for leave to withdraw. *See Anders*, 386 U.S. at 744. This Court's records shall reflect that Michael Henry Dibella is now proceeding without the assistance of counsel in this matter and is representing himself on any further proceedings or appeal.

*Affirmed*.