COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Friedman and Callins


TEDEQUEZ TAIMARK JONES

                                               MEMORANDUM OPINION[*]

v.       Record No. 1200-21-2                         PER CURIAM
                                            DECEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

(Nicole M. Gibson, Assistant Public Defender II, on brief), for
appellant. Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Rosemary V. Bourne, Senior
Assistant Attorney General, on brief), for appellee.


Tedequez Taimark Jones appeals the trial court's judgment revoking his previously

suspended sentences. Jones contends that the trial court abused its discretion by imposing an

active term of one year and six months' incarceration. After examining the briefs and record in

this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is

wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the trial court's

judgment.

BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed

unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App.

529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is

considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In 2016, Jones was convicted of credit card theft, obtaining money by false pretenses, and identity theft. The trial court sentenced Jones to a total of thirty-five years' imprisonment with thirty-four years and six months suspended, conditioned upon twenty years' good behavior and indefinite supervised probation. Jones's previously suspended sentences were revoked and resuspended in November 2018 and revoked and resuspended, in part, in June 2019.

In March 2021, Jones's probation officer reported that Jones had violated the terms and conditions of his previously suspended sentences because he had failed to maintain contact with the officer. The trial court issued a capias for each conviction on March 30, 2021, which were served on Jones on May 31, 2021. On July 21, 2021, Jones's probation officer reported that Jones had incurred new charges for multiple offenses in three different jurisdictions during the suspension period. On July 28, 2021, Jones's probation officer further reported that Jones had been convicted of assault and battery of a family member and failure to appear.

At the revocation hearing, the trial court accepted the violation report and addenda without objection. As aggravating evidence, the Commonwealth recited Jones's criminal history from 2007 to 2019, which included twenty-one convictions and five revocation events in five different jurisdictions.

Jones conceded that he had suffered a new conviction for assault and battery of a family member during the suspension period. He further conceded that he had pending charges for eluding, attempting to distribute an imitation controlled substance, and hit and run, "where a woman hit [his] car" but he was charged. Jones denied, however, that he had failed to maintain contact with his probation officer, contending that he had "constant[ly]" called his probation officer but his probation officer "never called [him for] months at a time."

Jones also explained that he had been homeless and returned to Richmond because he "didn't have nowhere to go" and "was on the street." But Jones also stated that he had lived continuously with his girlfriend, Jessica Barner, except for a time when she had "put [him] out." Upon his release from incarceration, Jones planned to return to his place of employment and care for his children; he was participating in a program because he wanted to make a change. Jones claimed that he did not do "stuff just to get in trouble," but "trouble just" found him. Jones intended to report to probation in person going forward because he felt that the probation officer was "just making stuff up."

On cross-examination, Jones acknowledged that he was not allowed to drive. He also agreed that his prior assault and battery convictions also had involved Barner and he was the "one starting the problem." He contended, however, that he and Barner were working on their communication and he was also participating in behavioral group therapy.

Barner testified that she and Jones had had an "on and off" relationship for "five, six years" and had lived together the entire time. Although Barner attempted to keep Jones out of trouble, Jones sometimes became "aggressive." Barner and Jones had been "relating better," and she was willing to attend counseling with him. Jones helped support the children.[1] Barner had once participated in a "three-way" call when Jones was trying to contact his probation officer. In addition, Barner had been to probation and parole "several times" seeking counseling services for Jones but, when "Ms. Mayo left," there was confusion concerning who was supervising Jones. Barner confirmed that Jones was prescribed medication for depression and schizophrenia, but he had stopped taking it because it made him feel "lazy and tired." Barner and Jones were both willing to participate in counseling to ensure that past incidents do not reoccur.

---

[1] Barner had three children, including one child with Jones.

Jones argued that he had tried to maintain contact with his probation officer but, when his former probation officer left, he did not understand "who was supervising him and . . . what he was supposed to do." Jones now understood that he should attend his scheduled appointments in person if he wanted credit. Although Jones had incurred new law violations, he argued that some of them "appear[ed] a lot worse than they" were. Jones had been incarcerated for six months awaiting his revocation hearing and asked the trial court to impose an active sentence of six months' incarceration and return him to probation.

In the Commonwealth's view, Jones had evaded responsibility for his actions and, instead, depended on Barner "to do everything" for him. The Commonwealth argued that Jones had had ten years to rehabilitate himself and asked the trial court to impose an active sentence of more than one year. The Commonwealth stressed that Jones needed to "stand on his own two feet" and suffer consequences for his actions.

Before pronouncing sentence, the trial court noted Jones's "terrible criminal history." The trial court found that this was Jones's third revocation on the 2016 convictions and he had served only a total of ten months' incarceration. The trial court found that "the short terms of incarceration" were not sufficiently "meaningful" to Jones to prompt a change in his behavior. The trial court further found that Jones had accepted "zero" responsibility for his actions, including suffering new convictions while on probation. The trial court imposed one year and six months of Jones's previously suspended sentences and removed Jones from probation. Jones appeals.

ANALYSIS

Jones contends that the trial court abused its discretion when it imposed an active sentence of one year and six months' incarceration. He argues that the trial court failed to give appropriate weight to his mitigating evidence, including his homelessness, his acceptance of responsibility for

his actions, and his "efforts" to cooperate with probation. The record does not support Jones's argument.

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). Jones conceded that he had violated the terms and conditions of his previously suspended sentences when he incurred new convictions. Thus, the record establishes that the trial court had sufficient cause to revoke his suspended sentences.

Under the operative terms of the revocation statute in effect when the proceedings began in the trial court, once the court found that Jones had violated the terms of the suspension, it was required to revoke the suspended sentences. Code § 19.2-306(C)(ii).[2] The trial court was permitted—but not required—to resuspend all or part of the sentences. *Id.*; *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002).

It was within the trial court's purview to weigh any mitigating factors Jones presented, including his need for substance abuse treatment. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Balanced against Jones's mitigation evidence, however, was the fact that he was convicted of new offenses during the suspension period. In addition, Jones failed to maintain contact with his probation officer. Furthermore, the record reflects that this was Jones's third revocation on his 2016 convictions.

---

[2] Code § 19.2-306(C) was amended, effective July 1, 2021, and no longer requires the trial court to revoke the sentence. 2021 Va. Acts Spec. Sess. I, ch. 538. Jones does not contend that he was entitled to the benefit of the statutory amendments. Moreover, even under the new statutory framework, when the trial court finds "that the defendant was convicted of a criminal offense that was committed after the date of suspension . . . the court may revoke the suspended sentence and impose or resuspend any or all of that period previously suspended." Code § 19.2-306.1(B).

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Jones's disregard of the terms of his suspended sentences supports a finding that he was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). The record demonstrates that Jones failed to make productive use of the grace that had been extended to him repeatedly. Accordingly, we hold that the sentence the trial court imposed represents a proper exercise of discretion. *See Alsberry*, 39 Va. App. at 321-22 (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

To the extent that Jones argues that his sentence was disproportionate, this Court declines to engage in a proportionality review in cases that do not involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011). We noted in Cole that the Supreme Court of the United States "has never found a non-life 'sentence for a term of years within the limits authorized by statute to be, by itself, a cruel and unusual punishment' in violation of the Eighth Amendment." *Id.* at 653 (quoting *Hutto v. Davis*, 454 U.S. 370, 372 (1982) (per curiam)). *Cf. Vasquez v. Commonwealth*, 291 Va. 232, 243 (2016) (rejecting Eighth Amendment challenge to 133-year active sentence because the sentence was imposed for "eighteen separate crimes"). As noted, the record reflects that the instant proceedings were Jones's third revocation proceeding on his 2016 offenses and, despite the trial

court's repeated extensions of grace, Jones continued to commit new offenses and failed to cooperate with probation.

## CONCLUSION

Having reviewed the record, we hold that the sentence the trial court imposed represents a proper exercise of discretion.

Accordingly, we affirm the trial court's judgment.

*Affirmed.*