COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Lorish and Senior Judge Petty

MARCO ANTRIONE CHERRY, JR.

                                     MEMORANDUM OPINION*

v.       Record No. 1913-22-1                       PER CURIAM
                                            JUNE 20, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Robert G. MacDonald, Judge

(Samantha Offutt Thames, Senior Appellate Counsel; Virginia
Indigent Defense Commission, on brief), for appellant.

(Jason S. Miyares, Attorney General; Robert D. Bauer, Assistant
Attorney General, on brief), for appellee.

The trial court found Marco Antrione Cherry, Jr., in violation of his probation for his 2009

convictions for possessing cocaine and simultaneously possessing drugs and a firearm. The trial

court revoked the remainder of his suspended sentences, resuspended three years and six months,

and ordered him to serve six months. Cherry contends that the evidence did not prove that he

willfully violated his probation. He also maintains that the trial court abused its discretion in

imposing a six-month active sentence. After examining the briefs and record in this case, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a). We affirm the judgment.

## BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed

unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App.

---

\* This opinion is not designated for publication. *See* Code § 17.1-413.

529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

On February 5, 2009, the trial court convicted Cherry for possessing cocaine and possessing drugs and a firearm simultaneously. The trial court imposed a total sentence of five years of imprisonment, but suspended all of it. The trial court ordered Cherry to complete two years of supervised probation and pay court costs.

The trial court found Cherry in violation of his probation on August 26, 2010. The trial court revoked Cherry's suspended sentence and resuspended four years, thus giving Cherry one year of active time to serve. The revocation order required Cherry to complete probation for an indeterminate period with a minimum of two years to begin upon his release from confinement. The trial court also ordered Cherry to pay court costs.

Cherry's probation officer filed a major violation report (MVR) on August 29, 2022. Cherry's probation supervision began on September 10, 2019.[1] Since that time, Cherry had failed to report as instructed three times and absconded from supervision, thus violating Conditions 6 and 11 of his probation. Additionally, the MVR charged that Cherry violated the special condition of his probation to pay court costs. As of the date of the MVR, Cherry's whereabouts were unknown. The police arrested Cherry on a capias for the violations on October 27, 2022.

At a December 1, 2022 revocation hearing, the Commonwealth presented evidence that on October 1, 2019, Cherry reviewed and signed a document listing the conditions of his probation including Condition 6—that he follow his probation officer's instructions and be truthful, cooperative, and report as instructed—and Condition 11—that he could not abscond from supervision. In addition to the standard 11 conditions, the document listed, as a special condition,

---

[1] Appellant was not released until September 2019 because he was incarcerated on unrelated federal charges.

the requirement that Cherry set up a payment plan with his probation officer to satisfy his fines and court costs. Above the signature lines on the document was the following statement: "I have read the above, and/or had the above read and explained to me, and by my signature or mark below, acknowledge receipt of these Conditions and agree to the Conditions set forth."

Matthew Wise, Cherry's probation officer, testified that his first contact with Cherry was on April 28, 2022, when he was removed from the "ShadowTrack" program because of a pending violation of his federal probation. Cherry failed to report to Wise as instructed on May 2, June 13, and August 5, 2022. Wise mailed Cherry two letters at his listed address, but Cherry did not contact Wise or appear at the probation office as the letters instructed. Wise twice went to the residence and left his contact information. Cherry phoned Wise on July 21, 2022; they scheduled an appointment for August 5, 2022, but Wise never saw him again. Cherry had made no payment toward his court costs of $3,557.68.

In his own behalf, Cherry maintained that he contacted Wise by phone after several unsuccessful attempts, but the officer was sick with COVID and postponed scheduling a face-to-face meeting with him. Cherry denied that they scheduled a meeting for August 5, 2022, and claimed that Wise indicated he had COVID. According to Cherry, Wise knew that Cherry was working at a Target Warehouse. Cherry and his mother were experiencing family difficulties after two of the mother's siblings passed away. At the time of the revocation hearing, Cherry was employed at a hookah lounge.

Cherry argued that any violation of his probation conditions was not willful. The trial court, however, credited the Commonwealth's evidence concerning Wise's attempts to contact Cherry and schedule meetings with him, as well as Cherry's failures to appear as instructed by the officer. In addition, Cherry had made no payment toward his court costs. For these reasons, the trial court found Cherry in violation of his probation Conditions 6 and 11 and the special condition concerning

payment of costs. Before sentencing, Cherry stated that he was unaware of the requirement that he pay fines or costs and that he would have paid if he had known. The trial court revoked Cherry's suspended sentences, resuspended three years and six months, and ordered him to serve six months. This appeal followed.

ANALYSIS

I.

Cherry argues that the trial court erred in finding that he willfully violated the conditions of his probation. Cherry asserts that he tried to maintain contact with Wise, who knew where he lived and worked, and that he did not understand "that he owed the court any financial debt."

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)).

Under Code § 19.2-306(A), a trial court may "revoke the suspension of sentence for any cause [it] deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Upon determining that a defendant has violated the terms of his suspended sentence, a trial court may revoke that suspension and "impose a sentence in accordance with the provisions of [Code] § 19.2-306.1." Code § 19.2-306(C).

The "revocation of a suspended sentence lies in the discretion of the trial court and . . . this discretion is quite broad." *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004) (quoting *Hamilton v. Commonwealth*, 217 Va. 325, 326 (1976)). Nevertheless, "[t]he cause deemed by

- 4 -

the court to be sufficient for revoking a suspension must be a reasonable cause." *Marshall v. Commonwealth*, 202 Va. 217, 220 (1960). "The exercise of judicial discretion 'implies conscientious judgment, not arbitrary action.'" *Rhodes v. Commonwealth*, 45 Va. App. 645, 650 (2005) (quoting *Slayton v. Commonwealth*, 185 Va. 357, 367 (1946)).

On October 1, 2019, shortly after he began probation supervision, Cherry signed a document that stated the conditions of his probation, including Conditions 6, 11 and the special condition to pay court costs. His signature on the document acknowledged that he knew of the required conditions. Nonetheless, Cherry repeatedly violated Condition 6 by failing to appear for scheduled appointments with Wise. Although Cherry and Wise did connect by phone in July 2022, Cherry did not appear for a meeting scheduled for August 2022. Eventually, Wise was unable to contact Cherry and determined that he had absconded.

Although the requirement that he pay court costs was contained in his sentencing order, the 2010 revocation order, and the document containing his probation conditions, Cherry made no payment toward his court costs. Cherry asserts no claim that he was financially unable to make payment toward his court costs, but concludes that he must not have known about the condition since he was employed but yet did not pay. We reject this leap of logic. Other than Cherry's own statement before sentencing, there was no evidence to substantiate this claim. *See Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (finder of fact can reject the accused's self-serving testimony and conclude that he is lying to conceal his guilt).

Upon all the facts and circumstances, the trial court had reasonable cause to conclude that Cherry willfully violated the conditions of his probation. Accordingly, we find no abuse of discretion in the trial court's decision to revoke Cherry's suspended sentences.

Cherry contends that the trial court abused its discretion in imposing a six-month active sentence. He asserts that at the time of the revocation hearing he was employed, caring for his family, and satisfying his federal probation obligations. He argues that the trial court abused its discretion in failing to give sufficient weight to these mitigating circumstances and imposing an active sentence.

The weight to give any mitigating factors presented by the defendant, however, is within the trial court's purview. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). "Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Bowman v. Commonwealth*, 290 Va. 492, 500 n.8 (2015) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). The record does not support Cherry's claim that the trial court neglected to weigh his mitigation evidence. "Barring clear evidence to the contrary, this Court will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh sentence." *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992).

Through Cherry's repeated probation violations, his refusal to comply with his probation officer's instructions, absconding from supervision, and failing to make any payment on court costs, he did not make productive use of the grace and leniency that the trial court previously extended to him. Accordingly, we hold that the sentence the trial court imposed represents a proper exercise of discretion. *See Alsberry v. Commonwealth* 39 Va. App. 314, 321-22 (2002) (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed.

*Affirmed.*