COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Beales, Huff and Chaney


JUSTIN ALAN FARMER

                                                    MEMORANDUM OPINION[*]
v.      Record No. 0904-22-1                             PER CURIAM
                                                       AUGUST 1, 2023
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge

(Michael A. Castillon, Assistant Public Defender, on brief), for
appellant.

(Jason S. Miyares, Attorney General; David A. Mick, Assistant
Attorney General, on brief), for appellee.


Justin Alan Farmer appeals from the decision of the Circuit Court of the City of Virginia

Beach revoking a portion of his previously suspended sentences. Farmer contends that "[t]he trial

court erred and abused its discretion in revoking two (2) years of the previously suspended felony

sentence and revoking twenty-four (24) months and three hundred and twenty-four (324) days of the

previously suspended misdemeanor sentences." Farmer states this is error "because the court failed

to give appropriate weight to mitigating circumstances in the case." After examining the briefs and

record in this case, the panel unanimously holds that oral argument is unnecessary because "the

dispositive issue or issues have been authoritatively decided, and the appellant has not argued that

the case law should be overturned, extended, modified, or reversed." Code § 17.1-403(ii)(b);

Rule 5A:27(b). Consequently, we affirm the decision of the trial court.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

On January 28, 2020, Farmer was convicted of two misdemeanor counts of assault and battery of his wife, Melissa Farmer, and one count of violating a protective order in the Virginia Beach Juvenile and Domestic Relations District Court ("JDR court"). The JDR court sentenced Farmer to twelve months of incarceration on each count, credited him for time served on the count of violating a protective order, and suspended the remaining sentences conditioned on twelve months of good behavior.

Less than twelve months later, on January 25, 2021, Farmer assaulted Melissa again in the presence of her four-year-old daughter and eleven-year-old, non-verbal, autistic son. Farmer's punches left bruises on Melissa's face and hands as she attempted to block the blows. She also suffered a concussion and contusion to the back of her head. During the assault, Farmer threatened to "splatter [Melissa's] brains and [her] son across the room."

Farmer was arrested and, in January 2022, convicted of assault and battery of a family member, third or subsequent offense, and violation of a protective order while armed with a deadly weapon.[1] The trial court sentenced Farmer to ten years of imprisonment with eight years suspended, conditioned upon ten years of good behavior and indefinite supervised probation. In addition, as a condition of his suspended sentences, the trial court specifically ordered that Farmer have "no contact with" Melissa. Nevertheless, while serving his two-year active sentence for the

---

[1] Additional charges of abduction and unlawful wounding by strangulation were nolle prossed.

felony convictions, Farmer sent several letters to Melissa, expressing his love for her and stating that he did not want to divorce her.

Based on Farmer's violation of the "no contact" condition of his suspended sentences, the trial court issued a capias for Farmer's arrest in March 2022. Moreover, based on his new felony convictions, the JDR court found that Farmer had violated the conditions of his suspended sentences for his misdemeanor convictions and revoked the unserved portions of those sentences.[2] Farmer appealed his misdemeanor good behavior violations to the circuit court (referred to herein as the trial court).

On May 23, 2022, the trial court considered the felony probation violation and Farmer's appeal of his misdemeanor good behavior violations. At the outset of the hearing, Farmer stipulated that he was "in violation for everything." Melissa testified that she had suffered six years of domestic abuse, which had "progressively worsened." Melissa further testified that Farmer told her that his actions were caused by his Lyme disease, which "made him act crazy." Melissa nevertheless wanted to keep her family intact, so they "started trying to work [on] the relationship" after he was released for his misdemeanor offenses. Farmer was supposed to attend a batterers intervention course but did not do so.

Melissa testified that Farmer's abuse had made her claustrophobic, "always looking for a way out," and "loud sudden noises [could] cause [her] to jump faster than ever before." She attended a recovery group and individual counseling and stressed that she would suffer psychological effects for the rest of her life. In addition, her son exhibited behavioral issues after witnessing Farmer's abuse, including suspension from school, and her daughter "lashed out with fits." Melissa testified that Farmer had not resided in their home since the January 2021 assault.

---

[2] The JDR court issued capiases for Farmer's arrest for the misdemeanor probation violations on October 22, 2021.

Melissa testified that while incarcerated, Farmer had attempted to contact her by telephone and mail in violation of the trial court's no contact provision. Melissa's call log demonstrated that Farmer began calling her a few weeks after the trial court entered the no contact provision, and he called so frequently that she "block[ed] the jail calls." Melissa acknowledged that there was no substance to Farmer's messages, only a recording of Farmer stating his name. She also acknowledged that the letters Farmer sent her were not hostile. Nevertheless, she testified that Farmer was a threat to her, her family, her livelihood, and the community. She feared that Farmer would kill her for testifying against him once he was released from incarceration and asked the trial court to help protect her and her family by sentencing Farmer "with time."

Vanessa Miley, Melissa's mother, testified that she had watched Melissa withdraw and "constantly be nervous and fearful" during her relationship with Farmer. Miley stated that Melissa was "stronger" now, "more like she was prior to" when Melissa and Farmer first met. Melissa and the children would come to Miley's home seeking "safety and refuge" from Farmer, but he would follow, harass, and manipulate Melissa until she returned home. Miley testified Farmer was a danger to the family and society because he was domineering, controlling, intimidating, and manipulative. In addition, Farmer was physically strong and trained in martial arts, allowing him to overpower and harm others. Miley feared that Farmer would kill Melissa if he was released from incarceration.

After all the evidence had been presented, Farmer asked the trial court to run any active sentence concurrently with the felony sentence he was currently serving. He asserted that his prior criminal history consisted of only traffic offenses until 2018. Farmer claimed he was in a "toxic relationship that went downhill extremely quick." He acknowledged that the trial court had ordered him not to contact Melissa but argued that he did not threaten her in the letters and only wanted to

- 4 -

"make things work." Finally, Farmer contended that he had completed a mental health evaluation in 2020 and had set up a batterers intervention course before he was incarcerated.

The Commonwealth asked the trial court to revoke the remaining balance on Farmer's misdemeanor convictions and to impose additional incarceration on his felony convictions. The Commonwealth argued that Melissa had suffered physical, mental, and emotional abuse for six years. The Commonwealth noted that the trial court had offered Farmer the opportunity to seek treatment, but Farmer beat Melissa "so bad . . . she thought she was going to die" and threatened to "bash her brains in" with a hammer. In addition, he contacted Melissa soon after he was incarcerated despite the trial court's no contact order. In the Commonwealth's view, Farmer was violent and dangerous; he had "blatantly disregarded" the trial court's order and did not deserve a concurrent sentence.

After arguments by counsel, the trial court found that Farmer had violated the terms and conditions of his previously suspended sentences. The trial court found this was one of the "worst" spousal abuse cases that it had encountered and that Farmer's "reprehensible conduct . . . should not be tolerated in this society or any other." The trial court determined that Farmer had had the opportunity to "get this thing right," but he failed to do so. The trial court then revoked Farmer's previously suspended misdemeanor sentences in their entirety. In addition, the court revoked and resuspended all but two years of Farmer's previously suspended felony sentences. Farmer now appeals.

## ANALYSIS

On appeal, Farmer argues that the trial court abused its discretion by "fail[ing] to give appropriate weight to mitigating circumstances" in this case, including "the lack of hostility" in his communications with Melissa and his "minimal criminal history."

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs*, 61 Va. App. at 535 (quoting *Davis*, 12 Va. App. at 86). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

"If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). "The court may again suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, less any time already served, and may place the defendant upon terms and conditions or probation." *Id.*

Farmer does not contend that the trial court did not have sufficient cause to revoke his suspended sentences. Indeed, he admitted that he was "in violation for everything." In addition, Farmer acknowledges that he "presented no mitigating evidence" to the trial court. Despite these facts, Farmer contends that he "argued mitigating factors from the Commonwealth's evidence" and that the trial court abused its discretion by failing "to give appropriate weight to the mitigating circumstances of the case."

As relevant to Farmer's claims, Code § 19.2-306.1(B) provides that

> [i]f the court finds the basis of a violation of the terms and conditions of a suspended sentence or probation is that the defendant was convicted of a criminal offense that was committed after the date of the suspension, or has violated another condition other than . . . a technical violation . . . then the court may revoke the suspension and impose or resuspend any or all of that period previously suspended.

The record demonstrates that Farmer suffered new criminal convictions during the suspension period for his misdemeanor revocation cases. In addition, by contacting Melissa while incarcerated, he committed a non-technical violation in his felony probation violation cases. Accordingly, it was within the trial court's discretion to "revoke the suspension and impose or resuspend any or all" of the previously suspended sentences. *Id.*

It was equally within the trial court's purview to weigh any mitigating factors Farmer presented, such as his lack of criminal history and the nature of his communications with Melissa. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Despite Farmer's argument to the contrary, the record demonstrates that the trial court considered these factors before fashioning an appropriate sentence and determined that Farmer had had the opportunity to "get this thing right," but he failed to do so. Moreover, balanced against the above mitigating factors was the severe nature of Farmer's new offenses. Indeed, the trial court found this was one of the "worst" spousal abuse cases that it had encountered and that Farmer's "reprehensible conduct . . . should not be tolerated in this society or any other."

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). Farmer completely disregarded the conditions of probation and, instead, contacted Melissa soon after the trial court entered the no contact order. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Farmer failed to make productive use of the grace that had been extended to him. Accordingly, we hold that the trial court did not abuse its discretion in imposing a portion of the previously suspended sentences.

*See Alsberry v. Commonwealth*, 39 Va. App. 314, 321-22 (2002) (finding the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant]'s offenses and his continuing criminal activity").

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

*Affirmed.*