COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Raphael and Frucci
Argued at Arlington, Virginia


DAVID MICHAEL JACKSON

v.      Record No. 1065-23-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE STEVEN C. FRUCCI
AUGUST 27, 2024


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Michael E. Levy, Judge

Eric Weathers, Assistant Public Defender (Kelsey Bulger, Deputy
Appellate Counsel; Virginia Indigent Defense Commission, on
briefs), for appellant.

Anna M. Hughes, Assistant Attorney General (Jason S. Miyares,
Attorney General; Francis A. Frio, Senior Assistant Attorney
General, on brief), for appellee.


David Michael Jackson challenges the circuit court's judgment revoking his previously

suspended sentences and sentencing him to two years of active incarceration. He argues that the

circuit court improperly considered his decision to contest his technical violations as an

aggravating factor at sentencing. He also contends that the circuit court made a clear error of

judgment in balancing the aggravating and mitigating evidence. For the following reasons, we

reverse and remand for resentencing.

I. BACKGROUND

In revocation appeals, "[t]he evidence is considered in the light most favorable to the

Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535

(2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). In February 2018, the circuit

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

court convicted Jackson on guilty pleas of larceny with the intent to sell and driving with a revoked operator's license, third or subsequent offense. The court sentenced Jackson to a total of 5 years and 12 months' incarceration, with 3 years and 21 months suspended. The circuit court conditioned the suspended sentence on the successful completion of an indefinite period of supervised probation, not to exceed five years.

Jackson finished his term of active incarceration and began supervised probation in May 2021. Jackson's probation officer, Bradley Tull, reported that Jackson's "initial adjustment to supervision was satisfactory." In November 2021, however, he failed to report to three "urine screen[s] as instructed." In early 2022, he tested positive for cocaine twice, failed to report to another urine screen, and failed to report to an appointment with his probation officer. Following the positive tests, Jackson completed a substance abuse evaluation with the Rappahannock Area Community Services Board (RACSB) and began "individual" substance abuse treatment.

In an August 2022 addendum, Tull reported that Jackson had been charged with new charges after an April 2022 motorcycle accident. In light of the accident, Tull temporarily allowed Jackson to attend appointments by phone, but Jackson nevertheless missed two appointments. After May 23, 2022, Jackson ceased communicating with Tull and absconded from supervision. The RACSB subsequently removed Jackson from substance abuse treatment "due to noncompliance." As for the new charges from the April 2022 motorcycle accident, the circuit court ultimately convicted Jackson on his guilty pleas of felony hit and run, misdemeanor reckless driving, and a charge of misdemeanor construction fraud.

On November 13, 2022, the circuit court issued a capias for Jackson's arrest and ordered him to show cause why some, or all, of his previously suspended sentences should not be revoked. At subsequent hearings, Jackson admitted that he had committed a "condition one" violation of his probation given his new convictions. However, he asserted that he had not violated his probation in

any other way. Jackson's mother, Melinda, testified that Jackson was in a motorcycle accident on April 14, 2022, and suffered "serious injuries" to his back and pelvis that required "extensive" orthopedic surgery. Melinda stated that while recovering, Jackson lived in her house, at the address he had previously given to Tull. Doctors prescribed Jackson a "narcotic" to manage the pain, but he "became addicted" to the medication. Jackson was working for a basement waterproofing company but was unable to work after the accident. He was still recovering in December 2022 and could only work "small jobs." Melinda claimed that Jackson had a plumbing job "lined up" after his release from incarceration. She also had worked with Jackson's attorney to secure Jackson's enrollment in a substance abuse treatment program.

After the close of the evidence and argument by counsel, the circuit court found that, in addition to committing new criminal offenses, Jackson had violated his probation by absconding from supervision, failing to report for appointments and urine screens, and testing positive for cocaine. For sentencing, the Commonwealth submitted Jackson's criminal record, which contained numerous felony and traffic offenses dating back to 1988, including burglary, larceny, reckless driving, racing, driving under the influence, and driving on a revoked operator's license. In response, Jackson contended that he had been "continuously working to get substance abuse treatment and mental health help since" his incarceration. He had been accepted into a substance abuse treatment program and had been working as a trustee in the jail for several months.

Jackson asked the circuit court for "leeway" and a sentence at the "lower end of the guidelines,"[1] given his efforts to obtain substance abuse treatment. He emphasized that he had been in a motorcycle accident that left him physically debilitated for months and resulted in his

---

[1] The discretionary sentencing guidelines recommended between "time served" and one year in jail.

addiction to pain medication. He also stressed that he had "employment" and a "loving family" and that he was "finally healed enough from his injuries" to "move on with his life."

The Commonwealth responded that it was "puzzling" that Jackson insisted on "separate findings of guilt" on each probation violation considering that he admitted to the "condition one" violation because of the new criminal convictions. The Commonwealth then argued that his not-guilty pleas could justify a higher sentence. Jackson objected, complaining that the Commonwealth was arguing that he should receive "a greater sentence for exercising his trial rights." The circuit court responded that, considering recent modifications to the sentencing guidelines allowing courts to consider "acceptance of responsibility" as a basis for lowering the guidelines, it was "fair at this juncture to argue that the opposite of acceptance of responsibility can be considered by the [c]ourt in imposing sentence." The Commonwealth, having originally posited the argument, agreed. The Commonwealth also maintained that while on probation, Jackson committed the same larceny-type and traffic offenses that characterized his extensive criminal record. Accordingly, it asked the court to impose the balance of his 3 year and 21 month suspended sentence.

In allocution, Jackson stated that he had been incarcerated for ten months before the revocation hearing. He reiterated his efforts to obtain treatment, asserting that he had "learned a lot about [his] mental disabilities." He had children and grandchildren and claimed to "accept responsibility." He asked the court to give him "the opportunity" to further his substance abuse and mental health treatment so he could "stay out of this situation."

Afterwards, the circuit court rendered its sentence. It revoked the unserved portion of Jackson's sentences and resuspended all but two years. While stating its reasoning, the circuit

court highlighted Jackson's criminal record, the new crimes, and the other "matters that we spent I don't know how much time on . . . and for which responsibility was not taken."[2]

## II.  ANALYSIS

Jackson argues that the circuit court erred when rendering its sentence by improperly considering his decision to contest his technical violations as an aggravating factor at sentencing. He also asserts that the circuit court made a clear error of judgment in balancing the aggravating and mitigating factors for sentencing.  Because we find that the circuit court gave significant weight to an improper factor when rendering its sentence, we reach only the first issue.  *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (stating that "the doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

"Subject to the provisions of § 19.2-306.2," the circuit court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time . . . within the period of suspension fixed by the court."  Code § 19.2-306(A).  "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C).

In adjudicating a revocation appeal, we do not reverse "the trial court's 'findings of fact and judgment . . . unless there is a clear showing of abuse of discretion.'"  *Jacobs*, 61 Va. App. at 535 (quoting *Davis*, 12 Va. App. at 86).

> A trial court abuses its discretion when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; [or] when all proper factors, and no improper ones, are

---

[2] Notably, while this commentary was made during the rendering of the sentence, it came at the close of the contested trial and not during a separate sentencing hearing.

considered, but the court, in weighing those factors, commits a clear error of judgment.

*Murry v. Commonwealth*, 288 Va. 117, 122 (2014) (alteration in original) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)).  We may reverse a trial court's sentencing decision "only upon 'clear evidence that [the decision] was not judicially sound.'"  *DeLuca v. Commonwealth*, 73 Va. App. 567, 575 (2021) (alteration in original) (quoting *Jefferson v. Commonwealth*, 27 Va. App. 477, 488 (1998)).

It has been well decided that "it is proper for a court to consider a defendant's present refusal to accept responsibility, or show remorse," at sentencing.  *Lawlor v. Commonwealth*, 285 Va. 187, 266 (2013) (internal citations and alterations omitted).  Lack of remorse or failure to accept responsibility, however, can only be used as an aggravating factor at a sentencing hearing if the evidence is a snapshot of the defendant's "present tense" position at that hearing.  *See id.* Such evidence that is explicitly linked to the defendant's constitutional right to contest the proceedings in general is not allowed, as to penalize a defendant for pleading not guilty would be a blatant violation of due process and his constitutional rights.[3]  *Smith v. Commonwealth*, 27 Va. App. 357, 362 (1998); *see Lawlor*, 285 Va. at 266.  Here, the circuit court agreed with the Commonwealth that it could consider, in fashioning a sentence, Jackson's "opposite of acceptance of responsibility" when he chose to contest the technical violations.  Because the type of evidence proffered as "appropriate" was explicitly linked to the defendant's plea of not guilty, it is not tied to the defendant's "present tense" state of mind at the hearing and is not a proper

---

[3] "Acceptance of responsibility" has recently become a term of art related to the Virginia Sentencing Guidelines Worksheet as a result of the Virginia Criminal Sentencing Commission offering trial judges the option of reducing the low end of the sentencing guidelines range for those who accept responsibility in certain cases.  Contrary to the assertions made by the Commonwealth in the case at hand, this recent change to the Sentencing Guidelines Worksheet in no way abrogates the rule that a defendant cannot be penalized for pleading not guilty or expanded the breadth of the use of this type of evidence—a court cannot treat a defendant's exercise of his constitutional right to a trial as a sword against the defendant.

factor to consider.  Further, from the record it is clear that such a factor, inappropriate as it was, made its way into the circuit court's calculus for a ruling when it reiterated its appropriateness before finalizing sentencing of the defendant and focused on "the matters that we spent I don't know how much time on today . . . and for which responsibility was not taken."  Therefore, since the circuit court gave significant weight to Jackson's plea of not guilty and request for a trial in rendering its sentence, the circuit court abused its discretion.

## III.  CONCLUSION

For the foregoing reasons, the circuit court's judgment is reversed and remanded for resentencing.

*Reversed and remanded.*