UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Friedman and Senior Judge Clements

BARTHOLOMEW JUNIOR SEBRELL

MEMORANDUM OPINION*

v.      Record No. 1465-22-1      PER CURIAM
                                  SEPTEMBER 19, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF SOUTHAMPTON COUNTY
W. Richard Savage, III, Judge

(Rocco Columbus; Randall Page & Bruch, P.C., on brief), for
appellant.

(Jason S. Miyares, Attorney General; Suzanne Seidel Richmond,
Assistant Attorney General, on brief), for appellee.


Bartholomew Sebrell pleaded guilty to assault of a law enforcement officer and

misdemeanor obstruction of justice. By final order entered September 20, 2022, the trial court

sentenced him to 5 years, 12 months' incarceration, with all but four years suspended. Based upon

his new convictions, Sebrell conceded that he had violated the terms and conditions of a previously

suspended sentence. The trial court revoked Sebrell's previously suspended four-year sentence and

resuspended two years. Sebrell challenges the active sentences the trial court imposed. He argues

that the sentences were "harsh and imprudent" because the trial court disregarded the sentencing

guidelines and failed to consider his mitigating evidence. After examining the briefs and record in

this case, the panel unanimously holds that oral argument is unnecessary because "the appeal is

wholly without merit." Code § 17.1-403(ii)(a); Rule 5A:27(a). The trial court's judgment is

affirmed.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

In July 2013, Sebrell pleaded guilty to robbery under a written plea agreement. The trial court sentenced Sebrell to ten years' imprisonment with four years suspended, conditioned on his good behavior and indeterminate supervised probation. Sebrell finished his term of active incarceration and began supervised probation in July 2020.

In December 2021, probation reported that Sebrell had incurred new convictions and tested positive for cocaine and opiates. In addition, Sebrell had pending charges for assault of a law enforcement officer, disorderly conduct, obstruction of justice, and driving while intoxicated. On January 11, 2022, the trial court issued a capias for his arrest, which was executed on January 20, 2022.

Sebrell pleaded guilty to assault of a law enforcement officer and obstruction of justice under a written plea agreement.[1] Before accepting Sebrell's guilty pleas, the trial court conducted a colloquy with him to ensure that he understood their implications. During the colloquy, Sebrell acknowledged that he had discussed the maximum punishment for each offense with his attorney and understood that assault and battery of a law enforcement officer carried a mandatory minimum sentence of six months' incarceration. Sebrell affirmed that he understood that the sentencing guidelines were a "recommendation" and the trial court was not required to follow them. Sebrell acknowledged that he was on probation and understood that his guilty pleas could affect his probation status. Sebrell confirmed that the plea agreement did not contain an agreed disposition and asked the trial court to accept the written plea agreement. The trial court found that Sebrell's pleas were freely and voluntarily entered, with an understanding of the nature and consequences of his pleas.

---

[1] In exchange for his guilty pleas, the Commonwealth would move to nolle prosequi the remaining charges of disorderly conduct and driving while intoxicated.

The Commonwealth proffered that in November 2021, officers responded to a disturbance call from a residence. Upon arriving to the residence, Tamika and Joseph Cotton informed the officers that Sebrell, after destroying their property, was "getting ready" to drive away from the scene in Tamika's vehicle.

Sebrell drove the vehicle from the back of the residence to the front. The officers yelled at Sebrell, ordering him to stop the vehicle. Sebrell exited the vehicle in an "aggressive manner," and smelled of alcohol. Sebrell approached the Cottons, who were standing in the doorway to the residence, and "yell[ed] and scream[ed] in their faces." When Tamika closed the door, Sebrell kicked it and "bang[ed]" on the windows.

The officers detained and, ultimately, arrested Sebrell. Sebrell attempted to kick and head butt Officer Brown "several times throughout" his arrest. When the officers placed Sebrell in the holding cell, he "rush[ed]" at Brown, hitting Brown's torso with his head and shoulders. In addition, while Sebrell was in custody at the hospital, officers had to "take him to the ground" because of his behavior. Sebrell disagreed with the evidence, but he acknowledged that that would be the evidence the Commonwealth presented had the case gone to trial.

Based on Sebrell's pleas and the Commonwealth's proffer of evidence, the trial court accepted the plea agreement and found Sebrell guilty of assault and battery of a law enforcement officer and misdemeanor obstruction of justice. The trial court nolle prossed the remaining charges, ordered a presentence report, and scheduled Sebrell's joint sentencing and revocation hearing.

At the joint hearing, Sebrell conceded that he had violated the terms and conditions of his previously suspended sentence because he had incurred new convictions.[2] Sebrell testified that

_____

[2] In addition to the above convictions, Sebrell had been convicted of misdemeanor assault in another jurisdiction.

he "always" reported as instructed to his probation officer. He contended that his "only problem" was his positive drug screens; he self-medicated to help with his "pain and mental issues," but he now understood that he needed prescription medication to "help [him] focus." Sebrell stressed that he never absconded from supervision.

Sebrell testified that he suffered from bipolar disorder, "multiple personality disorder," and attention-deficit/hyperactivity disorder. He acknowledged that his most recent criminal acts were "out-of-control" because he had stopped taking his prescription medications and attending his mental health treatment. He believed that "maybe [he] could manage [his mental health] on [his] own." He claimed that he understood that he needed mental health treatment and was "facing the consequences" for his choices.

Sebrell stressed that he had accepted responsibility for his new convictions by pleading guilty to the charges. He had served nine months' incarceration while awaiting sentencing and was ready to participate in mental health treatment. Sebrell testified that he understood he could no longer self-medicate. Upon his release from incarceration, he planned to obtain mental health treatment, secure employment, and take his medication because he wanted to "do better."

On cross-examination, Sebrell acknowledged that he had been "getting in trouble since [he was] a young juvenile." He admitted that he was on probation for robbery when he incurred his new convictions and faced a four-year sentence on his probation violation. He also acknowledged that he had used marijuana "very quickly" after his release from prison. In addition, he conceded that probation had provided a "team of individuals" to help "get [him] on track," but he had stopped attending treatment and meetings.

As to an appropriate sentence for Sebrell's probation revocation, the Commonwealth asked the trial court to impose an active two years' imprisonment. The Commonwealth noted that probation had formed a "team" to help Sebrell, but Sebrell used cocaine and opiates and

committed new, "violent" crimes. In addition, soon after Sebrell was released from incarceration for a "serious" offense, he used marijuana. In the Commonwealth's view, Sebrell's new convictions, drug use, and failure to participate in probation deserved a sentence at the high end of the guidelines.[3]

Turning to an appropriate sentence for Sebrell's new convictions, the Commonwealth asked the trial court to impose a sentence within the sentencing guidelines recommendation.[4] In the Commonwealth's view, Sebrell had displayed "assaultive conduct since he was a child." The Commonwealth noted that Sebrell had been before the court as a juvenile and again when he threatened to bomb a police station. Although the trial court tried to "work with" Sebrell, he did not comply and was committed to the Department of Juvenile Justice ("DJJ"). While in the DJJ, Sebrell assaulted staff and "other people," and attempted to circumvent security. Most recently, Sebrell had assaulted a law enforcement officer.

Noting that he had been incarcerated for nine months pending sentencing, Sebrell asked the trial court to impose six months' incarceration for the new charges, eight months' incarceration for the revocation, and place him on "intensive" supervised probation and "significant" mental health treatment. In addition, Sebrell asked the trial court to order that both sentences run concurrently. Sebrell argued that his criminal conduct was "in some way" caused by his underlying mental health. He acknowledged that he was "out of control" when he committed the assault, but he contended that he "gets in trouble" when he does not take his

---

[3] The discretionary revocation guidelines recommended a sentencing range of eight months' incarceration to two years' imprisonment.

[4] The discretionary sentencing guidelines recommended a sentencing range of one year, eleven months' incarceration to five years, nine months' incarceration, with a midpoint of three years, ten months' imprisonment.

prescribed medications. Sebrell noted that he had accepted responsibility for his actions, the officer did not suffer injury, and Sebrell was willing to follow the rules of probation.

In allocution, Sebrell reiterated that he had accepted responsibility for his actions when he pleaded guilty to the charges. He noted that he was taking his medications while incarcerated and the medications were helping him get "on the right path." He asked the trial court for another chance to prove that he can succeed on probation.

The trial court found that Sebrell had a "terrible" criminal history that consisted of "32 separate charges." The trial court acknowledged his mental health issues but found that it also had an obligation to protect the community from Sebrell who had been "anything but a law-abiding citizen." The trial court sentenced Sebrell to 5 years, with 1 year suspended, for the assault of a law enforcement officer, and 12 months' suspended incarceration for misdemeanor obstruction of justice. It also revoked Sebrell's previously suspended four-year sentence and resuspended two years. The trial court ordered that the active sentences run consecutively.

As noted above, Sebrell challenges the total active sentence imposed. He argues that the trial court failed to consider his mitigating evidence, including that he pleaded guilty to his new charges, conceded that he had violated the terms and conditions of his probation, maintained contact with his probation officer, and that the officer incurred no harm from Sebrell's assault.

ANALYSIS

I. Sentencing

"We review the trial court's sentence for abuse of discretion." *Scott v. Commonwealth*, 58 Va. App. 35, 46 (2011). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)). "[O]nce it is determined that a sentence is

within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

The sentences the trial court imposed were within the ranges set by the legislature. *See* Code §§ 18.2-10, 18.2-11, 18.2-57, and 18.2-460. It was within the trial court's purview to weigh the mitigating evidence Sebrell presented, including his mental issues and acceptance of responsibility. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). The record does not support Sebrell's contention that the trial court failed to consider his mitigating evidence. The record demonstrates that the trial court expressly acknowledged that it would "certainly take [Sebrell's argument] into consideration." Criminal sentencing decisions "rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Minh Duy Du*, 292 Va. at 563. Balanced against Sebrell's mitigating evidence, however, was his "terrible" criminal history that began with his commitment to DJJ. Thus, the record affirmatively shows that the trial court considered Sebrell's mitigation evidence. Because Sebrell's "sentence was within the statutory range, . . . our task is complete." *Thomason*, 69 Va. App. at 99.

## II. Revocation

Sebrell further contends that the trial court abused its discretion when it imposed an active sentence of two years' imprisonment upon the revocation of his previously suspended sentence. After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "When a defendant fails to comply with the terms and conditions of a suspended sentence, the trial court has the

power to revoke the suspension of the sentence in whole or in part." *Alsberry v. Commonwealth*, 39 Va. App. 314, 320 (2002). "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

The trial court had sufficient cause to revoke Sebrell's previously suspended sentence because he had incurred new convictions and tested positive for illicit drugs. Upon finding that Sebrell had violated the terms of his suspended sentence, the trial court was permitted—but not required—to re-suspend all or part of the sentences. *Alsberry*, 39 Va. App. at 320.

"The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." *Howell v. Commonwealth*, 274 Va. 737, 740 (2007). By his failure to cooperate with probation, Sebrell demonstrated that he was not amenable to rehabilitation. "When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been convicted and sentenced to a term of confinement.'" *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) (quoting *Price v. Commonwealth*, 51 Va. App. 443, 448 (2008)). Sebrell failed to make productive use of the grace that had been extended to him. Having reviewed the record, we hold that the trial court did not abuse its discretion. *See Alsberry*, 39 Va. App. at 321-22 (finding that the court did not abuse its discretion by imposing the defendant's previously suspended sentence in its entirety "in light of the grievous nature of [the defendant's] offenses and his continuing criminal activity").

## CONCLUSION

Finding no abuse of the trial court's sentencing discretion, its judgment is affirmed.

*Affirmed.*