COURT OF APPEALS OF VIRGINIA

Present:  Judges Huff, Athey and Fulton
Argued by videoconference

**PUBLISHED**

TEDDY RAY CISNEROS

v.      Record No. 1385-23-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE GLEN A. HUFF
SEPTEMBER 24, 2024

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge[1]

Brett P. Blobaum, Senior Appellate Attorney (Virginia Indigent
Defense Commission, on briefs), for appellant.

Timothy J. Huffstutter, Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


On August 21, 2023, the Circuit Court for the City of Danville (the "trial court") issued

an order revoking Teddy Ray Cisneros's ("appellant") suspended sentences and ordering him to

serve the remaining balance of five years and five months in prison.  Appellant challenges that

judgment, alleging the trial court lacked authority to revoke his suspended sentences because the

two prior revocation orders, from February 2022 and May 2023, were void ab initio under

amended Code § 19.2-306.  On those grounds, he further claims that the most recent period of

suspension validly imposed by the trial court expired on July 30, 2022, thus prohibiting the trial

court from punishing him for any allegedly violative conduct occurring after that date.

As explained below, this Court finds that appellant's arguments are procedurally

defaulted under Rule 5A:18.  Appellant's collateral attack of the February 2022 and May 2023

---

[1] Judge Reynolds issued the August 21, 2023 revocation order, from which appellant
appeal.  As noted herein, Judge Joseph W. Milam, Jr., presided over all of appellant's prior
proceedings in this matter.

revocation orders relies solely on his assertion that the period of suspension imposed in each order exceeded the maximum period allowed by statute. Precedent from both this Court and the Supreme Court, however, demonstrates that an error of this nature would render a revocation order, at most, voidable rather than void ab initio.

Despite conceding that he did not preserve below the arguments he now raises on appeal, appellant asks this Court to invoke the ends of justice exception to Rule 5A:18. This Court declines to do so, finding that appellant has not proven a miscarriage of justice. Accordingly, this Court affirms the judgment below.

BACKGROUND[2]

In 2014, appellant was indicted for and pleaded guilty to one count of felony shoplifting, in violation of Code § 18.2-103.[3] The trial court sentenced him on January 22, 2015, to five years' incarceration with three years and ten months suspended, conditioned upon eighteen months of supervised probation and four years of good behavior to begin after appellant successfully completed the probationary period.[4] The suspension was further conditioned upon appellant (i) providing "a DNA sample and legible fingerprints," (ii) paying $1,142.77 in restitution, and (iii) engaging in "drug/alcohol counseling and mental health counseling" while on probation.

Appellant began his period of supervised probation on October 26, 2015, with an expected release date of April 26, 2017. On November 28, 2016, appellant's probation officer

---

[2] "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013) (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

[3] The case number assigned to this matter was 14-1198-00.

[4] Judge Joseph W. Milam, Jr., presided over these proceedings.

filed a major violation report ("MVR") alleging that appellant had violated several conditions of his probation.[5] The trial court issued a capias for appellant on November 29, 2016, which was executed on April 23, 2017.

New Conviction for Petit Larceny

While incarcerated in Danville City Jail on other pending criminal charges in 2017, appellant filed a motion for pretrial bond.[6] The trial court granted his request and released appellant on a "$3,500.00 secured bond" subject to a series of conditions including supervision by the Halifax/Pittsylvania Court Services Pretrial Agency.

Appellant's pretrial officer subsequently reported to the trial court that appellant had violated the conditions of his bond and supervision by testing positive for illegal drugs on June 5, 2017, and failing to report to or have any contact with the pretrial services agency since June 29, 2017. As a result, the trial court issued a capias for appellant on July 14, 2017, in both his pending case and on the underlying revocation matter. Appellant was eventually arrested on March 17, 2018, and indicted in his pending case for one count each of statutory burglary (Code § 18.2-91) and petit larceny 3rd offense (Code § 18.2-96) from September 19, 2016.

At a bench trial on May 21, 2018, the trial court sustained appellant's motion to strike the statutory burglary charge but found appellant guilty of the petit larceny offense. That case was continued for sentencing. On June 19, 2018, appellant's probation officer filed an addendum to the prior MVR from 2016 to include appellant's new petit larceny conviction as a violation of his

---

[5] According to the MVR, appellant had not contacted probation since leaving his last known address on September 23, 2016, and his whereabouts were unknown to his probation officer. As it turns out, the petit larceny offense for which appellant was subsequently convicted in 2018 had occurred on September 19, 2016.

[6] No date had been set yet for a revocation hearing on appellant's alleged probation violations regarding his suspended sentence for felony shoplifting.

probation in connection with the 2015 felony shoplifting suspended sentence.[7] The trial court addressed both cases at a hearing on June 29, 2018.

For the new petit larceny conviction, the trial court sentenced appellant to five years' incarceration with four years and three months suspended.[8] That suspension was conditioned upon 18 months of supervised probation, among other terms, and 3 years of good behavior to begin after successful completion of probation. Regarding the underlying felony shoplifting conviction, the trial court revoked appellant's suspended sentence and resentenced him to three years and ten months' incarceration, with all but three months suspended.[9] That new suspension was conditioned upon 18 months of supervised probation, among other terms, and 3 years of good behavior after appellant's release from probation.

<u>Revocations of Both Suspended Sentences Between 2019 and 2021</u>

On January 15, 2019, appellant's probation officer filed MVRs alleging probation violations in both of appellant's suspended sentence cases. The trial court issued a capias on January 28, 2019, which was executed on February 22, 2019. During that interim, the treatment program that appellant had been enrolled in since July 23, 2018, advised the trial court that appellant was being discharged for non-compliance, including his failure "to attend all [after-care] meetings as scheduled and required."

Following a hearing on March 15, 2019, the trial court found appellant in violation of the terms of his suspended sentences for failing to comply with the terms of probation, including his participation in the specified treatment program. Consequently, the trial court revoked both of

---

[7] The report noted that the "offense date" of the new petit larceny conviction was September 19, 2016, which was during appellant's probationary period for his felony shoplifting sentence.

[8] This matter was assigned case number 18-0641-00.

[9] The written revocation order was issued on July 2, 2018.

appellant's suspended sentences and re-sentenced him to a combined total of seven years and ten months' incarceration, suspending all but twenty-one days "already served."[10] The conditions of the suspension included 18 months' supervised probation and 6 years of good behavior.

Only a few months later, the trial court held another revocation hearing based on new allegations that appellant had violated the terms of his probation by continuing to test positive for illegal drugs. By an order issued on July 15, 2019, the trial court revoked both of appellant's suspended sentences and reimposed a combined sentence of seven years, nine months, and nine days' incarceration. The trial court again suspended the entire sentence except for six months and nine days, conditioned upon twelve months of supervised probation and five years' good behavior.

After serving the imposed active sentence, appellant reported to probation on January 10, 2020. During his intake appointment, appellant "admitted to using K2, heroin and ice in the Danville Adult Detention Center." He further admitted that he "had used heroin and meth within the last 72 hours" because he was experiencing withdrawals since his release from incarceration on December 29, 2019. Probation immediately shared this information with the trial court. At appellant's request, the trial court postponed his revocation hearing to allow him time to complete an evaluation for acceptance into The Hope Center, "an eight-month program that is a faith-based alcohol and drug addiction treatment center that also help[s] individuals prepare for a stable and sober transition to independent life."

At the subsequent revocation hearing on June 12, 2020, the trial court found appellant in violation of his suspended sentences, revoked both suspensions, and resentenced appellant to a

---

[10] Although the trial court did not provide separate calculations in its written order for appellant's two convictions, the math checks out when tracked through prior sentencing and revocation orders in the record. Here, the combined sentence of seven years and ten months divides out to four years and three months for the petit larceny conviction and three years and seven months for the felony shoplifting conviction.

combined total of seven years and three months' incarceration. The trial court re-suspended the entire sentence except for 12 months, conditioned upon 18 months of supervised probation and 6 years' good behavior, as well as "attendance and cooperation in the [post-incarceration] aftercare components of [the] Alpha" treatment program. Appellant began receiving services from the Alpha program on July 27, 2020, while incarcerated at the Danville Adult Detention Center.

Due to a COVID-19 outbreak at the jail, all Alpha services inside the facility were suspended indefinitely beginning on October 2, 2020. Appellant filed an emergency motion for release, stating that he was "currently unable to receive the therapeutic services he would otherwise be receiving due to his incarceration." He further attested that Alpha's Behavioral Health Counselor "is able to provide remote [counseling] services to those outside of the jail." The trial court granted appellant's motion and released him "on furlough for 60 days" to continue participating in the Alpha Program remotely. The furlough was conditioned upon several other provisions, including submission to "weekly random drug screens" and supervision by "Halifax Pittsylvania Court Services." Appellant was also required to "reside at 600 Main Street, Apt. 210, Danville, Va."

On November 9, 2020, probation advised the trial court that appellant had failed to comply with the terms of his furlough by failing to report for scheduled appointments, missing his weekly drug screens, and sleeping at an unauthorized residence. The trial court issued a capias for appellant on November 13, 2020, which was executed on December 19, 2020. In the interim, the trial court received a letter from appellant's Alpha counselor on December 7, 2020, which recommended appellant be discharged from the Alpha Program for his lapse in contact with services since November 6, 2020.

At a hearing on January 22, 2021, the trial court found appellant in violation of the conditions of his furlough, including his noncompliance with the Alpha Program. As a result, it

"modifie[d] its revocation order entered June 15, 2020[,] to reimpose the original twelve (12) months jail sentence" with credit for time served "and to remove the requirement that the defendant enter and complete the Alpha Program." The trial court further acknowledged that "[a]ll other terms and conditions of the June 15, 2020 revocation order shall remain in full force and effect, except as specifically modified herein." Consistent with that ruling, the trial court issued a revocation resentencing order on February 1, 2021, in which it reimposed appellant's previously set sentence of seven years and three months' incarceration with all except twelve months suspended. This suspension was conditioned upon 18 months supervised probation and 8 years good behavior.

### The February 7, 2022 Revocation Order

Just over a month later, on March 3, 2021, appellant's probation officer filed an MVR alleging that appellant had "absconded from supervision." The trial court issued a capias on March 9, 2021. Appellant was not arrested on the capias until December 28, 2021. At the following revocation hearing on January 21, 2022, the trial court found appellant in violation of his suspended sentences.

By revocation order issued on February 7, 2022, the trial court revoked both of appellant's suspended sentences and re-sentenced him to a combined total of six years and three months' incarceration, with all except six months suspended. This suspension was conditioned upon 18 months' supervised probation followed by four years and three months' good behavior. Appellant was released from incarceration to supervised probation on May 31, 2022.

### The May 1, 2023 Revocation Order

On September 29, 2022, appellant's probation officer filed an MVR alleging that appellant had tested positive for methamphetamine. The trial court issued a capias for appellant on October 3, 2022, and held a revocation hearing on November 4, 2022. At appellant's request,

the trial court ordered that appellant be evaluated for eligibility to participate in the Danville Pittsylvania Treatment Court (the "Treatment Court").  The matter was continued until November 17, 2022.

On that date, having been advised that appellant was deemed a suitable candidate for Treatment Court, the trial court transferred and reassigned appellant's cases "to the Treatment Court Judge for all purposes."  Appellant then signed the Treatment Court "Order" and "Participation Agreement," agreeing to abide by all the conditions contained therein.  He was subsequently released on his own recognizance.

Regular status reports on appellant's participation in Treatment Court documented his continued usage of illegal drugs and his repeated failure to report for scheduled appointments—with both his probation officer and members of his treatment team—despite receiving frequent reminders from the Treatment Court to do so.  Ultimately, appellant's participation in the Treatment Court was terminated on March 10, 2023, for his failure to abide by its rules.  As a result, his bond was revoked, and his cases were "returned to the standard court docket for the Danville Circuit Court" to "be set for final disposition in this matter."

Following a hearing on April 12, 2023, the trial court issued an order on May 1, 2023, revoking appellant's suspended sentences.[11]  It re-sentenced him to five years and nine months' incarceration with all but four months suspended, conditioned upon appellant's successful completion of supervised probation for eighteen months and subsequent good behavior for three years and eleven months.

---

[11] This was the last order signed by Judge Joseph W. Milam, Jr., in this case.

The Final Revocation Order

On June 29, 2023, appellant's probation officer filed an MVR alleging that appellant had violated Condition 8 of his probation by testing positive for amphetamine on May 19, 2023.[12] The trial court issued a capias for appellant on June 30, 2023. Before the capias was executed, probation filed an addendum to the MVR on July 17, 2023, charging appellant with violating Condition 11—absconding—because he had failed to make any contact with probation since June 13, 2023, despite the probation officer's multiple attempts to reach him.

Appellant was subsequently arrested in Halifax County on July 10, 2023, and returned to the trial court for a revocation hearing on July 28, 2023.[13] At the conclusion of the hearing, the trial court found appellant "in violation of the terms and conditions of [his] suspended sentence[s]" for violating Conditions 8 and 11 of probation. The trial court then revoked the remaining balance of appellant's suspended sentences and re-sentenced him to five years and

---

[12] Probation also provided the trial court a list of appellant's previous recorded probation violations from six separate dates—between June 29, 2018, and April 12, 2023—for violations of Conditions 1, 6, 8, 10, and 11. In the MVR itself, appellant's probation officer opined that "[p]robation does not appear to be effective as this is [appellant's] seventh violation on these cases[]" and, despite having tried "multiple treatment options[,]" "he continues to use illegal substances and shows no regard for the sanctions imposed by the court."

[13] The record contains the transcript for the July 28, 2023 revocation hearing, but not for any of the prior revocation hearings and proceedings. After reviewing the record, however, this Court finds that the missing transcripts are not indispensable to resolution of this appeal.

five months' active incarceration. That ruling was memorialized in the final revocation order issued on August 21, 2023.[14]

This appeal followed.[15]

ANALYSIS

"On an appeal of probation revocation, the trial court's 'finding[s] of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Heart v. Commonwealth*, 75 Va. App. 453, 460 (2022) (quoting *Green v. Commonwealth*, 75 Va. App. 69, 100 (2022)). Pure questions of law, however, including issues of statutory interpretation, are reviewed de novo. *Id.*

As relevant to this case, Code § 19.2-306(A) provides that, where a trial court "has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court."[16] Upon finding "good cause to

---

[14] Rule 1:1(a) provides that the trial court's jurisdiction expires "twenty-one days after the date of entry" of the final judgment. Here, the trial court's jurisdiction over the August 2023 revocation order expired on September 12, 2023. On October 17, 2023, appellant filed a "Motion To Modify And Reconsider Sentence Or For New Sentencing Hearing." The trial court summarily denied the motion by an order entered on October 19, 2023. Appellant does not challenge that ruling on appeal.

[15] Appellant filed a notice of appeal on August 10, 2023, appealing "the Order of Sentencing announced on July 28, 2023 for Probation Violation." Although the final judgment was not entered until August 21, 2023, appellant's "premature filing of the notice of appeal does not deprive this Court of jurisdiction over his appeal." *Saunders v. Commonwealth*, 12 Va. App. 154, 155 (1991). "A notice of appeal filed after the trial court announces a decision or ruling—but before the entry of such judgment or order—is treated as filed on the date of and after the entry." Rule 5A:6(a); *see also Jefferson v. Commonwealth*, 298 Va. 473, 478 n.4 (2020) (stating that a notice of appeal "filed after the court announces its decision but before the entry of judgment" is considered timely under Rule 5A:6(a)).

[16] Both Code §§ 19.2-303.1 and -306(C) limit the period of suspension a trial court may impose at the initial sentencing and in a revocation order, respectively, to "the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned[.]" Prior to the 2021 amendments, "courts were free to suspend sentences for 'a

believe that the defendant has violated the terms of suspension, the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). Furthermore, the trial court "may again suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned . . . ." *Id.* Any such period of suspension must be measured "from the date of the entry of the original sentencing order."[17] *Id.* These joint provisions limit the trial court's active jurisdiction regarding the terms of a revocation order, but they do not affect the trial court's subject matter jurisdiction over the revocation itself, which is governed by subsections (A) and (B).

The crux of appellant's arguments on appeal is that the trial court lacked authority to revoke his suspended sentences in the August 2023 order because the two prior orders—entered February 7, 2022, and May 1, 2023—were void ab initio. The basis of that claim is appellant's assertion that the trial court surpassed the bounds of its statutory authority by suspending execution of his petit larceny sentence for periods beyond the five-year maximum permitted

---

reasonable [period of] time, having due regard to the gravity of the offense, without regard to the maximum period for which the defendant might have been sentenced.'" *Barrow v. Commonwealth*, 81 Va. App. 535, 547 (2024) (quoting *Hannah v. Commonwealth*, 303 Va. 106, 117 (2024)).

[17] Code § 19.2-306(C) contains an exception to this rule, however, whereby "if a court finds that a defendant has absconded from the jurisdiction of the court, the court may extend the period of probation or suspended sentence for a period not to exceed the length of time that such defendant absconded." Without opining as to whether this provision applies to the facts of appellant's case, this Court concludes that resolution of the instant appeal does not depend upon such exception. *See generally Commonwealth v. White*, 293 Va. 411, 419 (2017) (noting that "[t]he doctrine of judicial restraint dictates" that appellate courts "decide cases 'on the best and narrowest grounds available'" (alteration in original) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015))).

under amended Code § 19.2-306.[18]  As discussed below, this alleged error does not render the revocation orders a nullity.  At most, such orders would be voidable rather than void ab initio.

Because void orders are considered a complete nullity, objections to such judgments need not be preserved in accordance with Rule 5A:18.  *See Terry v. Commonwealth*, 81 Va. App. 241, 250 (2024) ("A judgment that is void ab initio, often simply referred to as void, can be challenged for the first time on appeal because it is a judicial nullity."); *Hannah v. Commonwealth*, 303 Va. 106, 120 (2024).  In contrast, challenges to *voidable* errors cannot be raised for the first time on appeal; instead, they "must be preserved and brought before courts of appeal pursuant to our procedural Rules."  *Hannah*, 303 Va. at 120.  Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."

The distinction between void and voidable judgments is crucial to this appeal because objections to a voidable error are waivable by a party's failure to raise them below.  And although appellant readily admits that he did not previously present his current arguments to the trial court, he contends that such failure does not preclude consideration of his claims for the first time on appeal because the revocation orders he challenges are void, not merely voidable.

*I.  The February 2022, March 2023, and August 2023 Revocation Orders Are Not Void*

"A judgment which is void ab initio is a judgment so affected by a fundamental infirmity that it is no judgment at all."  *Hannah*, 303 Va. at 119.[19]  Unlike void orders, *voidable* orders

---

[18] At the time appellant was originally sentenced, petit larceny was a Class 6 felony carrying a maximum penalty of five years' incarceration.

[19] The Supreme Court recognizes

> five circumstances that may give rise to judgments which are void ab initio: when (1) [the judgment] was procured by fraud, (2) the

- 12 -

"are actions taken by a court in error but within the bounds of its authority[] . . . [and] usually involve a court's failure to comply with precedent or an applicable statute." *Id.* at 120. As noted above, a void order may be collaterally attacked for the first time on appeal, but challenges to a voidable order must be brought on direct appeal and comply with Rule 5A:18. Accordingly, this Court first addresses appellant's assertion that his three most recent revocation orders are void because the February 2022 and May 2023 orders contained suspension periods in violation of Code § 19.2-306(C).

To begin, the trial court derives its subject matter jurisdiction over suspended sentences exclusively by statute. *See id.* at 119 ("Courts have no inherent authority to suspend the execution of sentences or to impose probation conditions outside the parameters of the Virginia Code."). While Code § 19.2-303 et seq. governs trial courts' authority to suspend a sentence and place a defendant on probation at the original sentencing, Code § 19.2-306 et seq. "governs trial courts' authority at [subsequent] revocation proceedings." *Barrow v. Commonwealth*, 81 Va. App. 535, 545 n.4 (2024); *see also Green*, 75 Va. App. at 77 ("Code § 19.2-306(A) provides the statutory authority for a circuit court to revoke a suspended sentence."). As relevant here, Code §§ 19.2-303.1 and -306(C) establish limits to a trial court's active jurisdiction on "the length of suspended sentences a court may impose[]" first at the initial sentencing and then at sentencing following revocation, respectively. *Hannah*, 303 Va. at 124.

court lacked subject matter jurisdiction, (3) the court lacked jurisdiction over the parties, (4) the judgment is of a character that the court lacked power to render, or (5) the court adopted an unlawful procedure.

*Hannah*, 303 Va. at 119-20 (alteration in original) (quoting *Watson v. Commonwealth*, 297 Va. 347, 350 (2019)).

By asserting that the February 2022 and May 2023 revocation orders are void ab initio, appellant does not contest the trial court's jurisdiction.[20]  *See, e.g.*, *Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018) ("Jurisdiction . . . is the power to adjudicate a case upon the merits and dispose of it as justice may require." (quoting *Shelton v. Sydnor*, 126 Va. 625, 629 (1920))).  Instead, he argues only that "[a] sentencing order imposing a period of suspension in excess of the grant of authority contained in Code § 19.2-306 is void" under *Rawls v. Commonwealth*, 278 Va. 212 (2009), because "'the character of the judgment was not such as the [C]ourt had the power to render.'"  Reply Br. 5 (second alteration in original) (quoting *Rawls*, 278 Va. at 221).  In *Rawls*, the Supreme Court held that "a sentencing order which exceeded the limits of a prescribed statutory range was void ab initio because the court lacked the power to render a judgment of that character."  *Hannah*, 303 Va. at

_____

[20] In general, "[a] sentencing order revoking a suspended sentence is not void when the trial court 'had jurisdiction over the subject matter and the parties.'"  *Wilson v. Commonwealth*, 67 Va. App. 82, 92 (2016) (quoting *Dunham v. Commonwealth*, 59 Va. App. 634, 639 (2012)).  Because Code §§ 19.2-303.1, -304, and -306(C) do not grant "categorical judicial power over criminal cases or their attendant proceedings," they cannot "reasonably be read to strip a trial court of subject matter jurisdiction if the court violates those procedures."  *Cilwa v. Commonwealth*, 298 Va. 259, 269 (2019); *see also Hannah*, 303 Va. at 124.  Active jurisdiction—"pragmatically called the 'jurisdiction to err'"—involves a court's "proper exercise of its authority consistent with 'settled principles of the unwritten law' or any applicable 'mandate of the statute law.'"  *Cilwa*, 298 Va. at 266 (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427 (1924)).  Thus, "[e]rrors in active jurisdiction may only render a decision voidable, not void ab initio for lack of jurisdiction."  *Hannah*, 303 Va. at 123; *see also Pure Presbyterian Church of Washington v. Grace of God Presbyterian Church*, 296 Va. 42, 56 (2018) ("[A] mistaken exercise of that [active] jurisdiction does not render its judgment void." (alteration in original) (quoting *Parrish v. Jessee*, 250 Va. 514, 521 (1995))).

- 14 -

120. That ruling, however, related to the defendant's initial sentencing as opposed to any subsequent revocation proceedings.[21]

Recognizing this distinction, the appellant in *Hannah v. Commonwealth* urged the Court "to extend the logic of *Rawls* beyond initial sentencings to revocation proceedings and resuspensions in a Code § 19.2-306(C) proceeding." 303 Va. at 121. Appellant makes this same argument in the case at hand, relying on the premise that sentences and any accompanying conditions, including suspension periods, imposed as part of revocation proceedings are "punishments" subject to the *Rawls* principle. By deciding *Hannah* on other grounds, the Supreme Court declined to reach the question of whether "a period of suspension in excess of that allowed by Code § 19.2-306(C) . . . renders the [final] order voidable or void ab initio."[22] *Id.* at 120. It nevertheless "acknowledge[d] that a resuspension is fundamentally distinct from the initial act of sentencing following a criminal conviction" because "[t]he penalty imposed for a probation violation is not a new sentence but [instead] . . . a continuation of the original sentence[.]" *Id.* at 121 n.5.

---

[21] The version of Code § 18.2-32 governing Rawls' sentencing for second-degree murder "permitted a jury to fix a term of imprisonment of not less than five years imprisonment nor more than 20 years imprisonment[.]" *Rawls*, 278 Va. at 215. After being incorrectly instructed on the statutory range of punishment, the jury imposed 25 years' incarceration, which the circuit court then reduced to 20 years. *Id.* at 215, 221-22. The Supreme Court nevertheless held that "the circuit court erred by reducing [Rawls'] second degree murder conviction" and remanded the case for "a new sentencing hearing." *Id.* at 221-22. The Court explained that this holding would "eliminate the need for courts to resort to speculation when determining how a jury would have sentenced a criminal defendant had the jury been properly instructed or had the jury properly followed correct instructions." *Id.* at 221.

[22] The Court ultimately held that the restrictions in amended Code § 19.2-306 did not apply to Hannah's 2022 revocation proceeding because some of his violative conduct occurred prior to the amendment taking effect on July 1, 2021. *Hannah*, 303 Va. at 122. Under the law in effect at the time of his "March 2021 positive drug screen and associated rule to show cause[,]" the circuit court had authority "to resuspend Hannah's sentence for 'a reasonable period of time' and 'without regard to the maximum period for which the defendant might have been sentenced.'" *Id.*

- 15 -

Based on such distinction between initial sentencings and revocation proceedings, this Court subsequently refused to extend *Rawls* in a similar situation where "the central question [wa]s whether a revocation of a suspended sentence and resuspension that misapplies Code § 19.2-306.1 is one that the circuit court lacked the power to render, thereby making the decision a judicial nullity." *Terry*, 81 Va. App. at 252. This Court reasoned that "a simple misapplication of the statute[] . . . does not render a judgment void ab initio[]" because "imposing a term of incarceration" after revocation of a suspended sentence is not "the imposition of a *new* punishment." *Id.* at 252-53. Rather, "[t]he *punishment* is—and was—determined at the original criminal sentencing[;] . . . [a] sentence suspension, in contrast, is remedial in nature." *Id.* at 253; *see also Hannah*, 303 Va. at 119 (describing probation as "an act of grace" that comports with "liberally constru[ing] probation statutes to allow courts . . . the latitude to rehabilitate the offenders before them"). Indeed, "[t]he statutory scheme governing sentence suspensions clearly does not confer any additional sentencing power on the courts. It provides [merely] for the court to reimpose the remainder of the original sentence or a portion of it." *Terry*, 81 Va. App. at 253; *see also Canty v. Commonwealth*, 57 Va. App. 171, 179 n.9 (2010) ("The revocation and resuspension is a new sentencing *event*[,] but it is not a new *sentence*."), *aff'd*, No. 102221, 2011 Va. LEXIS 253 (Oct. 7, 2011).

That rationale applies with equal force to appellant's claim here regarding the length of suspension periods imposed in revocation orders. Just as "Code § 19.2-306.1 controls the amount of time to be resuspended for certain violations by limiting the amount of active time that the trial court can impose[,]" Code § 19.2-306(C) also limits the maximum length of the suspension period, measured from the date of the original sentence. *Terry*, 81 Va. App. at 252. The validity of the suspension period itself is therefore a question of statutory application outside

the scope of *Rawls* as it is neither a "new sentence" nor a "new punishment."[23]  Accordingly, where the trial court has jurisdiction to revoke a suspended sentence under the provisions of Code § 19.2-306, failure to comply with the statutory parameters for reimposing and/or resuspending the original sentence is voidable error that must be preserved in accordance with Rule 5A:18.[24]  *See Terry*, 81 Va. App. at 253-54.

Even assuming that the amended version of Code § 19.2-306(C) applied to appellant's February 2022 revocation proceedings and that the suspension periods in both the February 2022 and May 2023 orders violated the statutory limitations, such error does not render either order void ab initio.[25]  As a result, the August 2023 order cannot be void for relying upon those prior

---

[23] The holdings in both *Barrow v. Commonwealth* and *Hamilton v. Commonwealth*, 79 Va. App. 699 (2024)—affirming in part and reversing in part the challenged revocation orders— demonstrate that an error in the suspension terms is merely voidable and does not necessarily invalidate the entire revocation order even if properly preserved.  Indeed, if a suspension period exceeding the limitations in Code § 19.2-306(C) rendered a revocation order void ab initio, this Court could not have affirmed any part of what would otherwise have been a null order in those cases.  *See Barrow*, 81 Va. App. at 551 (affirming the trial court's authority to revoke appellant's suspended sentence and impose an active period of incarceration, but reversing the "additional period of suspension and probation" imposed in excess of the provisions in Code § 19.2-306(C)); *Hamilton*, 79 Va. App. at 711 (affirming the trial court's authority to revoke appellant's suspended sentence, impose an active sentence, "resuspend the remainder of that previously suspended sentence," and order another period of supervised probation, but "remand[ing] to the trial court only for it to correct . . . the good behavior requirement[,]" which extended "beyond a period that the recently amended [Code § 19.2-306] allows the trial court to enforce").

[24] This Court recently held, in *Barrow v. Commonwealth*, that the trial court did not err in revoking appellant's suspended sentence and in imposing a period of active incarceration, but nevertheless reversed the provision of further probation and suspension that exceeded the statutory limits of Code § 19.2-306.  81 Va. App. 535.  But unlike in the instant case, the appellant in *Barrow* complied with the requirements of Rule 5A:18 to "adequately preserve[] his right to appeal."  *Id.* at 545 n.3.  This Court expressly rejected the Commonwealth's contention to the contrary, finding that the record showed appellant had "clearly objected to any period of suspension and probation."  *Id.*  That discussion in *Barrow* reinforces this Court's conclusion here that a challenge to the period of suspension or probation imposed in a revocation order is a voidable issue that must be properly preserved "[l]ike any [other] ordinary legal error in a proceeding below[.]"  *Hannah*, 303 Va. at 120.

[25] Appellant asserts that the amended version of Code § 19.2-306 applied to the February 2022 revocation order because both parties agreed to proceed under the new statute.  In the

- 17 -

orders, and appellant advances no other independent argument as to the voidness of that particular order. Furthermore, because the February 2022 and May 2023 orders are only voidable and appellant's challenges to them were not preserved below, appellant cannot collaterally attack them now on appeal. *See Cilwa v. Commonwealth*, 298 Va. 259, 270 (2019) (holding that "a probationer is free to advocate on direct appeal for strict compliance with the statutory time limitations" in Code §§ 19.2-304 and -306, but that such defendant may not "rely upon these time limitations as a basis for a collateral attack on an earlier agreed-upon order").

Consequently, this Court accepts the validity of both orders and finds that the trial court had jurisdiction to revoke appellant's suspended sentences in August 2023 for violative conduct he committed in violation of the May 2023 revocation order. *See Kelley v. Stamos*, 285 Va. 68, 75 (2013) (observing that a court order may "be 'voidable' if it contains a reversible error," but that such order "is not 'void' until it is directly and successfully challenged"); *Hannah*, 303 Va. at 123 ("By definition, parties will be bound by voidable orders until the orders are overturned or otherwise vacated."). All three assignments of error here—based exclusively on appellant's contention that the February 2022 and May 2023 orders are void ab initio—are thus procedurally barred by Rule 5A:18 unless this Court invokes the ends of justice exception as appellant requests.[26]

---

absence of a transcript from that revocation hearing, however, the record does not demonstrate that either party or the trial court addressed the question of which version of Code § 19.2-306 applied. Appellant argues, in the alternative, that the amended version of the statute would have applied even without the consent of both parties because appellant's violative conduct— absconding—occurred both before and after the amendment took effect on July 1, 2021. This Court declines to address that issue because the February 2022 order is not void ab initio under either version of the statute. *See generally Hannah*, 303 Va. at 121 ("Judicial restraint dictates that we decide our cases on the best and narrowest grounds available to us, favoring dispositions tailored to the facts before us over broad pronouncements of law.").

[26] Although appellant staunchly avers that Rule 5A:18 does not bar his unpreserved arguments regarding the trial court's alleged ultra vires actions, he nevertheless asks this Court,

## II. The Ends of Justice Exception to Rule 5A:18 Does Not Apply

"The ends of justice exception is narrow and is to be used sparingly, and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Pulley v. Commonwealth*, 74 Va. App. 104, 126 (2021) (alteration in original) (quoting *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc)). "Th[is] burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Holt*, 66 Va. App. at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). It is not enough to simply "show that the Commonwealth *failed* to prove an element or elements of the offense[;] . . . to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (third alteration in original) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997)). "In order to show that a miscarriage of justice has occurred, thereby invoking the ends of justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Id.* (quoting *Redman*, 25 Va. App. at 221-22).

Appellant contends that the ends of justice exception applies here because "the last valid period of supervised probation had lapsed prior to any of the conduct in evidence before the trial court in the current revocation." Relying on his assertion that the February 2022 and May 2023 orders are void ab initio, appellant claims that the most recent valid revocation order "was dated February 1, 2021[,] and related to a revocation hearing that occurred on January 22, 2021." That

---

in the alternative, to reach the merits of his appellate claims by invoking the ends of justice exception to Rule 5A:18.

order imposed an 18-month period of supervised probation beginning upon appellant's release, followed by 8 years of good behavior.

According to appellant, because that period of supervised probation "ended without requiring further action of the court on July 30, 2022," the trial court was precluded from finding appellant in violation of probation in August 2023 for conduct that occurred *after* July 30, 2022. This argument fails for several reasons. To begin, as discussed above, appellant's failure to challenge the February 2022 and May 2023 orders on direct appeal bars him from collaterally attacking them now. As a result, the terms of those valid orders supersede the probation period established by the prior February 2021 order. Furthermore, not only was the prior probation period cut short by the subsequent revocation orders, but the violative conduct from 2021 that formed the basis of the February 2022 revocation order also occurred over a year prior to the expected probation termination date of July 30, 2022. Appellant's suspended sentences were similarly revoked in May 2023 for violations of the probation period established by the February 2022 order. That those orders imposed periods of suspension in violation of Code § 19.2-306(C) does not affirmatively show a miscarriage of justice where appellant continued to violate the conditions of his suspensions within the statutorily permitted timeframe.

Next, appellant mistakenly conflates the alleged "probation violation" with the revocation of his suspended sentences. Even were this Court to agree that appellant's period of supervised *probation* ended on July 30, 2022, pursuant to the February 2021 order, his positive drug screen in May 2023 still permitted the trial court to revoke his suspended sentences for failure to comply with the conditions of that ongoing *suspension*. Code § 19.2-306(A) explicitly authorizes the trial court to "revoke the suspension of sentence *for any cause* the court deems sufficient that occurred at any time within the probation period, *or within the period of suspension fixed by the court*." (Emphasis added). Therefore, appellant's positive drug screen,

which occurred within the eight-year period of good behavior ordered by the trial court in February 2021, was a sufficient reason for the trial court to find him in violation of the conditions of his suspended sentences in August 2023, regardless of whether it could also be characterized as a violation of "probation." *See Hannah*, 303 Va. at 119 ("Within the bounds prescribed by the General Assembly, trial courts have discretion to assign terms to a suspended sentence, and in the event of a violation, revoke it.").

On a related note, this Court finds that the challenged revocation orders were based on violative conduct that occurred within five years of appellant's petit larceny conviction from June 29, 2018. Even assuming, as appellant alleges, that the suspended sentence for his petit larceny conviction automatically expired after June 29, 2023, the record establishes that appellant's positive drug test in May 2023 constitutes a violation of his suspension over which the trial court retained jurisdiction when it entered the final revocation order in August 2023.[27] Pursuant to Code § 19.2-306, the mere expiration of a suspension period does not immediately terminate the trial court's authority to conduct revocation proceedings for violations that occurred *before* the expiration date.

Under those circumstances, the trial court may still "conduct a hearing to revoke the suspension of sentence" so long as it "issues process to notify the accused or to compel his

---

[27] By resolving the appeal on other grounds, this Court renders no opinion as to whether Code § 19.2-306(C)'s restriction on suspension periods—to "the maximum period for which [appellant] might originally have been sentenced to be imprisoned"—contemplates each charge separately (five years for the petit larceny conviction by itself) or jointly (adding the five years for the 2018 petit larceny to the remaining time on the 2015 felony shoplifting sentence, running consecutively to one another). *See, e.g.*, *Hannah*, 303 Va. at 121 ("Judicial restraint dictates that we decide our cases on the best and narrowest grounds available to us[.]"). This Court nevertheless notes its finding in *Hamilton v. Commonwealth* that, "because Hamilton's three underlying sentences would have run consecutively and . . . each have a maximum possible sentence of ten years of imprisonment, . . . Hamilton has a thirty-year period of suspension . . . [measured] 'from the date of the entry of the original sentencing order[.]'" 79 Va. App. at 708 (quoting Code § 19.2-306(C); and citing Code § 19.2-306(A))).

appearance before the court within 90 days of receiving notice of the alleged violation or within one year after the expiration of the period of probation or the period of suspension, whichever is sooner[.]" Code § 19.2-306(B).  Having complied with those requirements here, the trial court retained and properly exercised its power to revoke appellant's suspended sentences in August 2023 and to impose the remaining balance of five years and five months' incarceration.  Because appellant has neither served any active time nor been subject to conditions of probation or suspension for conduct that occurred outside the statutory time limits, the record does not show a miscarriage of justice and this Court thus declines to invoke the ends of justice exception.

CONCLUSION

In challenging the August 2023 revocation of his suspended sentence for a 2018 petit larceny conviction, appellant relies solely on a collateral attack of the prior revocation orders from February 2022 and May 2023.  He exclusively argues that those orders are void ab initio because they imposed terms of suspension exceeding the maximum period authorized by Code § 19.2-306.  For the foregoing reasons, this Court rejects appellant's claim and refuses to extend *Rawls v. Commonwealth* to revocation proceedings, including the resuspension of a sentence.

The errors alleged on appeal, therefore, render the trial court's orders merely voidable upon compliance with Rule 5A:18, and appellant concedes his failure to do so.  Moreover, this Court declines to invoke the ends of justice exception at appellant's request where the record belies his claim of manifest injustice.  Because appellant's suspended sentences were only ever revoked for instances of misconduct that occurred during suspension periods imposed within five years of his 2018 petit larceny conviction, this Court finds that appellant did not meet his burden of affirmatively proving a miscarriage of justice.  Accordingly, appellant's assignments of error are procedurally barred by Rule 5A:18, and the trial court's judgment is hereby affirmed.

*Affirmed.*